## HENRY A. MILES, by prochein ami, *versus* JOHN BOYDEN, Executor.

S makes a will, bequeathing legacies " to the two oldest children" of M. One of the two oldest at the date of the will dies. S afterwards by a codicil confirms the will, except in some particulars, saying nothing of these bequests. *Held*, that the two oldest children living at the testator's decease, were entitled to the legacies.

An action for a legacy will not lie until after a demand by the legatee upon the executor.

The power of a prochein ami commences with the suit, and he can therefore maintain a suit for such causes of action only as may be prosecuted without a previous special demand; unless the defendant has waived the necessity of a demand.

A father, as natural guardian, is not entitled to demand or receive payment of a legacy to his child; but where a demand by him was resisted by the executor, solely on the ground that the child had no claim to the legacy, it was *held* that the executor had waived the necessity of a demand, and an action by the legatee by his father as prochein ami was sustained.

THIS action, which was *assumpsit* to recover a legacy bequeathed by the defendant's testator, John Stebbings, came before the Court upon a case stated.

On the 12th of June, 1819, Stebbings made his last will, containing among other bequests the following :— " I give and bequeath to the two oldest children of the Rev. John Miles, of Grafton, fifty dollars each ;" and directing these and other legacies to be paid within one year after his decease. In February, 1821, he made a codicil, wherein he declared as follows : — " My last will and testament bearing date the 12th of June, 1819, is hereby ratified and confirmed in every part, excepting such part thereof as I hereby annul or alter." No mention was made in the codicil of the bequest to the children of J. Miles.

In July 1821, the testator died, and in September following the will and codicil were duly proved, and the defendant took upon himself the trust of executor.

At the time of making the will there were several children of J. Miles, of whom Mary and John Russell were the two oldest and the plaintiff the third. In December, 1819, John R. died.

No other demand of the legacy in question was made in behalf of the plaintiff, than what is to be inferred from two

Miles
*v*
Boyden.

letters of the defendant to J. Miles. In one, dated December 16, 1822, he says : — " I this day received a line from you respecting the legacy which was given to your children by Mr. Stebbings. You inform me that you have consulted the principal lawyers, and that they uniformly give their opinion, that your two oldest children are entitled to the money. I have consulted no one but———, and I understood them both to say, that in their opinion it was not legally due to you, and that another child could not take the place of that which was one of the oldest when the will was made. It is from such authority that I derive my opinion entirely. If this is not a correct one, the money is at your service, and shall be paid to you without any further trouble on your part. If I should conclude to have you commence a suit, I will give you information, so that you shall have proper time before next court. I will show your line to ——— . If he tells me that your two children are entitled to the money, there will be no further delay of the payment of the legacy. My only object is to do the business as the law directs. It is equal to me." In the other letter, dated February 28, 1823, he says that he has made inquiry to his satisfaction, and is without hesitation informed that the legacy of the deceased child is lapsed, and that it would be improper and unlawful for him to pay over the money ; and he adds, " If you should see fit to delay the prosecution for further information, it will not delay the decision, for, as I am informed, there can be none till next October."

If the Court should be of opinion that the plaintiff was entitled to recover, the defendant was to be defaulted, and judgment was to be rendered for such sum as the Court should direct.

*Oct. 5th,*
*1824, and*
*Oct. 4th,*
*1825.*

*A. Denny* for the plaintiff. By the will it was intended that the two oldest children living at the death of the testator should take the legacies. *Dingley* v. *Dingley,* 5 Mass. R. 537 ; *Lady Lincoln* v. *Pelham,* 10 Ves. 166. And further, by the republication of the will the plaintiff comes within the terms of it under any construction. 6 Cruise's Dig. 144, *tit.* 38, *c.* 7, § 1 ; *Barnes* v. *Crowe,* 1 Ves. jun. 486.

215     In *Prescott* v *Parker,* 14 Mass. R. 428, which was an

action on the executor's bond, for not paying a legacy, it was held that a special demand ought to have been made, but there has been no decision that such a demand was necessary in an action for the legacy itself. *Birks* v. *Trippet*, 1 Wms's Saund. 33, note 2. There seems to be no reason why an executor should not be bound to pay a legacy without a special demand, as well as a promissory note made by his testator; and in most of the precedents in Amer. Prec. Declarat. a special request is not inserted. But if a demand might have been required, the defendant has waived his right. The reason of making a demand is to give the executor an opportunity to pay without a suit. Here he resisted payment on the ground that no person was entitled to the legacy. The demand by J. Miles was made in behalf of the plaintiff; if the defendant meant to rely on the insufficiency of it, or on the want of authority in the person making it, he should have stated such objection as the ground of his refusal to pay. *Solomon* v. *Dawes*, 1 Esp. R. 83. Thus a tender in bank bills is good, if the party does not object to the kind of money tendered.

Supposing that a special demand of a legacy is unnecessary, or that the necessity of it is waived, an action by *prochein ami* may be sustained. The *St.* 1783, *c.* 24, § 17, puts legacies on the same footing with other debts, and the decisions in chancery, that if a legacy is paid to an infant the executor shall pay it a second time, do not apply; and it is apprehended that payment to an infant will be a discharge, as in the case of a payment to him of wages, or of a promissory note, or of damages recovered by him in trespass. *Baker* v. *Lovet*, 6 Mass R. 80.

*J Davis* for the defendant. By the terms of the will a present legacy was given, and the two oldest children at the time of making it were the legatees. Godolph. 272; *Coleman* v. *Seymour*, 1 Ves. sen. 209; Bac. Abr. *Legacies*, *B*, 2; *Northey* v. *Strange*, 1 P. Wms. 340. By the death of John Russell his legacy lapsed. The codicil makes the same disposition of the legacy as the law had made. It had fallen into the residuary fund, and the codicil confirms it as so lapsed.

No person was duly empowered to receive the money. A payment to the infant himself would be no protection to the

216

executor.    Toller, 314 ;  *Whopham* v. *Wingfield*, 4 Ves
629 ; *Phillips* v. *Paget*, 2 Atk. 80.    So of a payment to the
father as natural guardian.    *Dagley* v. *Tolferry*, 1 P. Wms.
285 ; *Rotheram* v. *Fanshaw*, 3 Atk. 629 ; *Genet* v. *Talmadge*,
1 Johns. Ch. R. 4.    The only mode to be pursued in or-
der to obtain payment, was to have a guardian appointed by
the judge of probate.    It is said that the chancery decisions
on this subject are not applicable.    The object of them was
to prevent the property of infants from being squandered.
If a *prochein ami* may sue for a legacy of 50 dollars, he may
for one of any amount whatsoever, and thus a person without
any authority, and without giving any security for the appro-
priation of the property, may make a demand and give a
discharge.    It is apprehended therefore that the decisions in
chancery have a bearing on this case.    Nor is the argument
drawn from an infant's power to sue in other cases by *pro-
chein ami* well founded.    Consequences of too great weight
are involved, to permit the application of that principle to the
case of legacies ; and it is sufficient that this exception has
been taken in chancery.    The subject was deemed so impor-
tant, that an act of Parliament was passed to enable executors
to pay the money in such cases into the Bank of England.

PUTNAM J.    It is the opinion of the Court, that the testa-
tor intended to designate the two children of the Rev. J.
Miles *by age*, and not *by name ;* and that those who answered
that description at the time when the will took effect, are
entitled to the legacies of fifty dollars apiece.    John R. died
before the testator made his codicil, which ratified his former
will in all respects not altered by the codicil itself ; and the
codicil takes no notice of the legacies to the two oldest chil-
dren of Mr. Miles.    A codicil is considered as a republica-
tion of a will ; so that lands bought after the will, and before
the codicil, pass by the will.    *Barnes* v. *Crowe*, 1 Ves. jun.
498.    The plaintiff was one of the two oldest children of
Mr. Miles when the codicil was made, and when the testa-
tor died.

217         In *Viner* v. *Francis*, 2 Bro. C. C. 658, a devise " to the
children of my late sister A," was held to enure to two sur-
viving children, although at the time when the will was made

A had three children living. One of them died after the will was made and before the testator died.

But the case of *Lady Lincoln* v. *Pelham*, 10 Ves. 172, is more applicable. There the testator devised to the younger children of A. The second child having become the eldest, the only survivor was held entitled. The chancellor considering the persons as designated by age, and not by name, and that those should take who answered the description at the time of the testator's death, the second, who had become the oldest child, was excluded.

In the case at bar the plaintiff was one of the two oldest children of Mr. Miles when the codicil was made and when the testator died ; and according to the sound construction of the will and codicil, we are satisfied it was the intention of the testator that the plaintiff should have the legacy in question.[1]

The defendant has made various objections to the right of the plaintiff to recover in this suit, notwithstanding his right to the legacy.

It is objected, that no demand was made for the payment of the legacy. It appears that there was no other demand than is contained in the letters which the defendant acknowledged he had received from Mr. Miles. It is evident that the defendant considered Mr. Miles's letter as a demand, for in his answer he says that he had been advised that it would be improper and unlawful for him to pay over the money, because the legacy had lapsed. It seems necessarily to be implied from the defendant's answers, that the plaintiff had requested him to pay, and the refusal is put altogether upon another ground.

But it is objected further for the defendant, that the plaintiff was not authorized to make the demand, and so it was merely void. If the defendant had originally made that ob-

---

[1] See *Lomax* v. *Holmden*, 1 Ves. sen. 290 ; *Emery* v. *England*, 3 Ves. 232 , *Bowles* v. *Bowles*, 10 Ves. 177; Ram on Wills, 50 to 52, (in Law Libr. *No.* 24, *p.* 28 to 30) ; *Chadwick* v. *Doleman*, 2 Vern. 528; *Teynham* v. *Webb*, 2 Ves. sen. 198, 210; *Hall* v. *Hall*, Ambl. 203; *Broadmead* v. *Wood*, 1 Bro. C. C. 77, *Matthews* v. *Paul*, 3 Swanston, 334; *S. C.* 2 Wilson's Ch. R. 64; *Savage* v. *Carrall*, 1 Ball & Beat. 265.

Miles
v.
Boyden.

218

jection and had persisted in it, it would have been fatal to this action. For the father, as the natural guardian, has no authority to demand and receive a legacy to his child.[2] He had never obtained any letters of guardianship. In Com. Dig. *Chancery*, 3 *G*, 6, it is said indeed, that payment to the father of an infant, where the legacy is not of value to support the charge of a decree, shall be good, though the father afterwards fails ; and if it is a very small sum, the executor may pay it to the infant legatee, but not if it be a considerable sum. But such a rule is extremely uncertain. How much money will support the charge of a decree ? what is a considerable, and what a small sum ? To one man the amount in controversy would be very small, to another it would seem and be in truth very great. The rule could not, we think, be applied here at all, excepting in respect to sums obviously to be regarded as within the principle of *de minimis* &c., which would not extend to the legacy under consideration. In *Dagley* v. *Tolferry*, 1 P. Wms. 285, the testator gave £100 apiece to four infant children, and on his death-bed he said that his executor should pay the money to their father for the use of the infants ; but the payment was held invalid.[1] In New York it is held that payment to the father as natural guardian is not allowable. *Genet* v. *Talmadge*, 1 Johns. Ch. R. 4. And that must be considered as the rule, in cases where there has not been a waiver of its application.

A demand by one having authority to receive and to discharge the legacy after it became payable, might have been insisted upon by the defendant. In the case of *Prescott, Judge &c.*, v. *Parker*, 14 Mass. R. 431, it was held that no action on a bond given for the faithful performance of the trust of executor, would lie in consequence of his not having paid

---

[2] *Hyde* v. *Stone*, 7 Wendell, 354; *Cunningham* v. *Harris*, cited in 3 Bro. C. C. 186; 2 Kent's Comm. (2d ed.) 219, 220; *Cooper* v. *Thornton*, 3 Bro. C. C. 186; 1 Eq. Ca. Abr. 300; Gilb. Eq. Ca. 103.

[1] See the remarks of Lord *Hardwicke* upon the case of *Dagley* v. *Tolferry* in *Phillips* v. *Paget*, 2 Atk. 80, in the course of which he says that " the rule laid down in that case is too strict, and that Lord *Cowper* seemed, even by the report of the case, to have had a remorse of judgment at the time, for, by examining in the Register's office, it appears that his lordship ordered the deposit to be divided between the parties."

a legacy payable at a day certain, which had passed, but which legacy had not been demanded ; the executor in such case not being in any fault.   And the Court intimated an opinion, that the same rule would apply, if the legatee should sue for his legacy according to the provision of the statute.   And we are now of that opinion.   The executor is not obliged to seek the legatee, but may properly wait until the money is demanded.[2]

But it s a familiar principle that a party may waive his rights.   " *Quilibet renunciare potest juri pro se introducto.*" If Mr. Miles had taken letters of guardianship and had sued as guardian, without having made any demand, the defendant would not have been obliged to make any exception on that account.   He might have waived that matter, and rested upon some other point of defence, or have consented to have judgment rendered against him.   But this suit is by *prochein ami*, and not by guardian, and the authority of the *prochein ami* is only commensurate with the writ ; and so it never could have been in the power of a *prochein ami* to have made a demand prior to his admission to prosecute.

**219**

At the common law, infants were required to sue and to defend by guardian.   Co. Lit. 135 *b*, note 220.   The law has not been altered as to the manner in which they are to defend But by the statute of *Westm.* 1, *c.* 48, infants were authorized to sue by *prochein ami* in an assise, and by *Westm.* 2, *c.* 15, in all other actions.   " *In omni casu quo minores infra ætatem implacitare possunt, concessum est &c., quod propinquiores amici admittantur ad sequendum pro eis.*"   It was a cumulative remedy, leaving it optional for them to sue either by guardian or by next friend.   *Young* v. *Young*, Cro. Car. 86 ; *Goodwin* v. *Moore*, ibid. 161.   But whether the suit be by one or the other, he must be admitted by the court.   If the suit be by guardian, it is not now necessary that there should be any other record of admission than the recital of the fact in the count ; — " *J. R. per A. B. gardianum suum ad hoc per curiam specialiter admissus, queritur &c.*"   *Rawlyn's case, in Error*, 4 Co. 53.   It was formerly held that the defendant was not compellable to answer until the plaintiff showed a rule

---

[2] See *Chapin* v. *Hastings*, 2 Pick. (2d ed.) 362, note 1.

Miles
*v.*
Boyden.

of court for his admittance ; Com. Dig. *Pleader, 2 C,* 1 ; **but** the rule now is, that the *prochein ami,* as well as the guardian, is to be admitted by the court without any other record than a recital in the count.[1] *Archer* v. *Frowde,* 1 Str. 304. It must follow therefore, that the *prochein ami,* commencing his authority with the writ and declaration, can only maintain the suit for such causes of action as may be prosecuted without special demand ; as for personal injuries done to the infant, or for sums of money where the writ itself is considered as the demand. So that this objection would be fatal to the action, unless the defendant may be considered as having waived the necessity of any special demand.

And upon reviewing the letters of the defendant to the plaintiff, we are satisfied that he has waived all objections to the plaintiff's right to recover, excepting only as to the construction of the will, *viz.* whether the testator intended that the infant for whom the plaintiff sues, should have the legacy as he claimed, or whether it was lapsed by the death of his brother John, as the defendant contended. In the defendant's letter of December 16, 1822, after observing that his counsel had informed him, that " another child could not take the place of that which was one of the oldest when the will was made," he says, " if this is not a correct opinion, the money is at your service, and shall be paid to you without any further trouble on your part. My only object is to do the business as the law directs. It is equal to me :" — giving the plaintiff to understand, that he had no other desire than to have the correctness of that opinion ascertained by a legal adjudication. And in the defendant's letter of the 28th February, 1823, the same point of controversy is stated. He says that he has been informed without hesitation that the legacy had lapsed. He made no other point or question. He did not call for a more formal or legal demand of payment. The plaintiff, lulled by these suggestions, took the mode that would be least expensive

---

[1] *Judson* v. *Blanchard,* 3 Connect. R. 579; *Apthorp* v. *Backus,* Kirby, 407 ; *Stewart* v. *Crabbin's Guardian,* 6 Munf. 280. In New York, by the Revised Statutes, (2 Rev. Stat. 446, § 2,) the appointment of a next friend is required before any process is issued in the name of an infant. *Wilder* v. *Ember,* 12 Wendell, 191.

and troublesome, to obtain a legal decision of the only point in controversy. He purchased a writ and therein was legally admitted to sue for the infant. It is not fair or allowable, after a decision has been given against him upon the main, indeed upon the only question, to raise incidental and strict technical objections which would have been avoided, if the plaintiff had not been induced by the defendant to believe they would not be made. The plaintiff having been admitted by the Court to prosecute for the infant, may discharge this judgment, and it will bar any future action for the legacy.

For these reasons the Court is of opinion, that the defendant should be defaulted; and judgment is to be for the plaintiff for the amount of the legacy, with interest from the date of the writ. No interest is to be charged before that time, because the plaintiff was not authorized, before he was admitted to prosecute, to give a discharge that would be binding upon the infant, and if the defendant had paid it before suit he would have been entitled to have a bond of indemnity.[1]

___
[1] See *Daggett, Petitioner, post,* 280.