ELIJAH H. SWARTHOUT and others *vs.* JAMES SWARTHOUT and others.

An order was made by the court of chancery, appointing M. guardian for certain infants, to take charge of their property and estate, and authorizing such guardian to release, discharge, and cancel a bond and mortgage belonging to them, "*upon receiving from J. S. a bond and mortgage upon unincumbered real estate of sufficient value to be ample security*," &c. *Held*, that by this order the power to discharge the bond and mortgage was connected with a condition precedent that the moneys should be first secured upon other property; and that the guardian had no right to discharge the bond and mortgage without first receiving the security mentioned in the order.

*Held also* that, by the order of the court, the guardian was constituted a special agent, as respected the discharging of the bond and mortgage, with limited and

Swarthout v. Swarthout.

conditional powers; and that unless his powers were strictly pursued, his acts were not binding upon his principals, the infants.

*Held further*, that the recording of a discharge, executed by such guardian without his having taken any new security, afforded no protection to subsequent mortgagees; especially where such discharge, on its face, did not show that the security had been given, as required by the order, but on the contrary recited that the money had been paid to the guardian, on the bond and mortgage.

Under such circumstances subsequent mortgagees, seeking a protection under the registry act, are bound to show that the guardian was properly appointed, and had power to discharge the mortgage, and that his limited powers had been strictly pursued, before the infants can be prejudiced by his acts.

IN EQUITY. This cause was first heard at a special term held before Hoyt, justice, at Canandaigua, in September, 1847, upon pleadings and proofs. After advisement, Justice Hoyt directed a decree for the plaintiffs, upon which he delivered an opinion which contains the facts of the case, sufficient for the understanding of the opinion by this court, as follows:

"HOYT, J. In 1829, James Swarthout was indebted to his father-in-law, Joseph Hunt, in a considerable sum, for which Hunt held the sealed notes of Swarthout. These notes were deposited by Hunt in the hands of Hon. John Maynard, to be prosecuted unless paid or secured, and with directions to Mr. Maynard to accept a bond and a mortgage on· Swarthout's farm, payable to Swarthout's children, in equal amounts, as they should respectively become of age. A suit was afterwards commenced upon the notes, by Mr. Maynard, and on the 16th day of November, 1829, it was settled by giving the bond and mortgage required by Mr. Hunt. The bond and mortgage were executed by James Swarthout to his children, Joseph, Barna, Coe, Elijah, Selah, Deborah, Letitia, Mary, and Nancy, all infants, and conditioned to pay each of them the sum of $768, when they should respectively arrive at 21 years of age. The bond and mortgage were left in the hands of Mr. Maynard, and the mortgage was recorded in Seneca county clerk's office, January 22, 1830. On the 11th of August, 1831, James Swarthout and wife conveyed 1 1-2 acres of the mortgaged premises to Jonas S. Larawa, and on the 30th April, 1835, Larawa, conveyed the same premises to the defendant John Neal. On the

14th day of August, 1837, a petition was presented to the vice chancellor of the sixth circuit, signed by the said James Swarthout, Coe Swarthout, Elijah Swarthout, and Selah Swarthout, setting forth that Coe was 19 years old, December 20, 1836; Elijah 18, the 19th August, 1837; Selah 16, July 2, 1837; and that Deborah Swarthout was 14 years old August 4, 1837; Letitia 13, the 13th September, 1837; Mary 11, the 22d January, 1837; and that Nancy was 10 years old the 9th April, 1837. The petition also set forth the rights of said infants to said bond and mortgage, and that they would severally be entitled to the sums thereby secured to them as they should respectively arrive at 21 years of age, and that said Elijah Swarthout was entitled to the further sum of $1000, as a legacy bequeathed to him by the said Joseph Hunt, and to $100 left him by an uncle in New-York, and that said infants had no other real or personal estate. The petition also set forth that the bond and mortgage had been left with Mr. Maynard, and that the petitioners understood and believed he contemplated removing to the west, and wanted to be rid of the trust as depositary of the bond and mortgage. The petition also set forth that James Swarthout had made sale of his farm upon which said mortgage was a lien, in Ovid, and had agreed to make a clear title thereto; and that he had purchased other property in Ulysses, and was desirous of having the said mortgage on the Ovid farm cancelled, and to secure the payments to his children on other property. The petition then prayed that a guardian might be appointed to take charge of the property and estate of the petitioners, Coe, Elijah, and Selah Swarthout, and also of the said infants Deborah, Letitia, Mary and Nancy Swarthout, and named John M. Miller as such guardian, and proposed James Swarthout and Charles E. Goodwin as his sureties.

The petition was sworn to on the 2d day of August, 1837, by James, Coe, and Selah Swarthout, and on the 7th of August, 1837, by Elijah Swarthout, and on the 9th of August, 1837, was presented to, and the certificate of Charles Humphrey, master in chancery, was procured thereto, of the truth of the facts stated in the petition, that Miller was a suitable person to be guar-

dian, and of the sufficiency of the sureties proposed, and the amounts in which they should give bonds.

On the presentation of the petition and certificate of the master to the court, on the said 14th day of August, 1837, an order was made by the vice chancellor, which, after reciting all the facts stated in the said petition and the certificate of the master, concluded as follows : "It is thereupon, on motion of H. S. Walbridge, solicitor for the petitioners, ordered that the said John M. Miller be, and he is hereby, appointed guardian for the said infants, for the purpose in said petition and hereinafter mentioned, upon the recording and filing with the clerk of the court for the sixth circuit the security mentioned in the said petition, and in the amount set forth in the certificate of the said master, conditioned for the faithful performance of the trust reposed in the said guardian, and for paying over and reinvesting and accounting for, all moneys that shall be received by him according to the order of any court having authority to give directions in the premises, and to observe the orders and directions of this court in relation to the said trust, such securities to be approved of by said master as to their form and execution, to be signified by his certificates indorsed thereon ; and it is further ordered that the said guardian be, and he is hereby authorized to release, discharge and cancel the said bond and mortgage mentioned in the said petition, upon receiving from said James Swarthout a bond and mortgage upon unincumbered real estate of sufficient value to be ample security for the amount due to the said infants, conditioned to pay to each of the said infants the amount due to them respectively at the time they shall respectively become of the age of 21 years, And the said guardian is hereby required to make a report to this court as soon as conveniently may be, of his proceedings in the premises."

The bonds required by the order were executed, approved and filed in the office of the clerk of the sixth circuit, on the 23d day of August, 1837, and on the same day, Miller, the guardian, executed a satisfaction piece of the mortgage, which was on the same day acknowledged and recorded. This satisfaction piece certified "that the sum of $768 secured to each of said infants

on their arriving at the age of 21 years respectively, in and by said mortgage, (describing it,) had been paid and satisfied to him as guardian of said infants, that is to say, the sum of $768 had been paid to him as such guardian, for each of said infants, making in all the sum of $5,376, and that the condition of said mortgage, so far as the interest of the said infants was concerned therein, had been performed, and the said mortgage discharged and satisfied."

There was no proof to show that any new security was taken by the guardian, for the money secured by said bond and mortgage, as was required by the order appointing him such guardian; or that any part of the mortgage money was in fact paid when the satisfaction piece was executed; or that it has been since paid or secured. And from all the circumstances of the case, it is highly probable that no security has been given, and that nothing has been paid. The sureties of the guardian, and the guardian himself, have all become insolvent, and the guardian is dead.

After the execution of the satisfaction piece, and on the 30th day of January, 1838, James Swarthout executed a mortgage to Charles Jackson on part of the premises, including other land, to secure the sum of $2500 in two years. On the 15th of July, 1838, Swarthout executed a mortgage of $8500 to one Reuben D. Dodge, on the premises described in the first mortgage. This mortgage was afterwards assigned to the North American Trust and Banking Company. There is no evidence showing that this mortgage was given to Dodge upon any valid consideration as between him and Swarthout. On the contrary, I think, from all the circumstances of the case, it was made for the purpose of being sold to raise money upon, or to be used to procure the stock of the North American Trust and Banking Company, and the stock to be sold to raise money by Swarthout.

The receivers and trustees of the North American Trust and Banking Company claim that they are *bona fide* purchasers of this mortgage, and that they are entitled to be protected as such, as against the complainants' mortgage, because such mortgage

had been discharged of record by the guardian of the plaintiffs. The purchasers of the land under the mortgage given to Jackson, make a like claim. Both of these mortgages have been foreclosed, but the plaintiffs were none of them made parties to such foreclosure.

The court of chancery has the care, custody and protection of infants and their estates, and has power to appoint guardians thereof, and to require from such guardians suitable and proper security for the trust reposed in them; and there can be no doubt that the court may restrict the guardians in their powers, and in the management and disposition of the property and effects of an infant. In this case the infants, with the exception of Elijah Swarthout, had no property except their respective interests in the bond and mortgage given them, no part of which was, by its terms, payable until they should respectively arrive at the age of 21 years, and the bond and mortgage was not upon interest. This bond and mortgage was well secured, and there was in fact no necessity or propriety in appointing a guardian to take charge of the estate of these infants, unless it was of the estate of Elijah Swarthout; and no guardian of the persons of the infants was appointed. The whole object of the proceedings seems to have been to enable James Swarthout to procure this mortgage to be discharged of record; and as he was the principal actor and moving party in the proceedings, and interested to procure its discharge, it was doubtless proper that the vice chancellor should scrutinize the proceedings with caution, and that he should require ample and sufficient security that the rights of the infants in the bond and mortgage should not be prejudiced. The petition asking for the appointment of Miller as guardian, also asked to have this bond and mortgage discharged by the guardian to be appointed, on his receiving security upon other unincumbered real estate. The order making the appointment, it will be observed, directed "that upon executing and filing the bonds therein required, Miller be appointed guardian for said infants, for the purpose in said petition and thereinafter in said order specified, which was that he be authorized to release and discharge and cancel the

said bond and mortgage mentioned in the petition, upon receiving from James Swarthout a bond and mortgage upon unincumbered real estate, of sufficient value to be ample security for the amount due the said infants," &c.

I think the fair construction of this order is, that the vice chancellor, in the appointment of the guardian, did not intend to give the guardian unlimited power in regard to this bond and mortgage; on the contrary, that he intended to restrict his powers in relation thereto, and to prevent his discharging them without receiving security as therein specified, and that the guardian had no power to discharge the bond and mortgage without receiving such security.

The mortgage having been properly recorded in the office of the clerk of the county, the record of it was notice to purchasers of its existence, unless the record of its discharge exonerated them from further inquiry. The mortgage having been discharged by a person other than the mortgagees, and by one claiming to be their guardian, the subsequent mortgagees are bound to make out that he had power to discharge the mortgage, before the plaintiffs can be prejudiced by his acts. The subsequent mortgagees were, therefore, bound to ascertain whether Miller was appointed a guardian with power sufficient to discharge the mortgage. And on looking at the order appointing him such guardian, the same order would show that he had no power to discharge the mortgage, except upon receiving another mortgage on other unincumbered real estate, of sufficient value to be ample security. And it was their duty to ascertain whether this had been done, before giving credit to the discharge. The discharge, on the face of it, did not show that the security had been given; on the contrary, it recited that the money had been paid to him on the bond and mortgage.

Judge Story, in *Story's Equity Jurisprudence*, § 400, says: "An illustration of the doctrine of constructive notice is, when the party has possession or knowledge of a deed under which he claims his title, and it recites another deed, which shows title in some other person; then the court will presume him to

Swarthout v. Swarthout.

have notice of the contents of the latter deed, and will not permit him to disprove it. And generally it may be stated as a rule on this subject, that when a purchaser can not make out a title but by deed which leads him to another fact, he shall be presumed to have knowledge of that fact. So the purchaser is, in like manner, supposed to have knowledge of the instrument under which the party with whom he contracts as executor or trustee, or appointee, derives his power. Indeed, the doctrine is still broader; for whatever is sufficient to put a party upon inquiry, (that is, whatever has a reasonable certainty as to time, place, circumstances, and persons, is in equity held to be good notice to bind him." (*See Deming* v. *Smith*, 3 *John. C. R.* 344.)

There can be no doubt that these plaintiffs are entitled to have their bond and mortgage reinstated, and a decree declaring it a valid security as against the debtor James Swarthout. And this mortgage being prior in point of time to the claims of the other defendants, the plaintiffs are entitled to have a decree as against them; unless they can be protected under the provisions of the registry acts. (*Story's Eq. Juris.* §1502. *But see* 7 *John. C. R.* 150.)

And inasmuch as the guardian's powers in reference to this bond and mortgage were limited and restricted by the order appointing him, I think the defendants who seek a protection under the registry of the discharge of this mortgage, are to be required to establish: First. That Miller was properly appointed guardian. Second. That his limited powers had been strictly pursued, and that the security required by the order appointing him, to be given before he was at liberty to discharge the mortgage, had in fact been given. This latter fact not having been shown on the part of the defendants, they are not entitled to protection under the registry acts. There are several other questions raised on the part of the plaintiffs, which it will not now be necessary for me to examine.

A decree must be entered in this cause setting aside the satisfaction piece executed by James M. Miller as guardian of the plaintiffs and others, and declaring the bond and mortgage described in the bill as having been executed by James Swarthout

to the plaintiffs and others, to be as valid and subsisting a lien upon the mortgaged premises, so far as the rights of the plaintiffs and Coe Swarthout are concerned, as if such discharge had not been executed. And that the claims of the other defendants to the mortgaged premises are subsequent and subject to such lien, and directing a reference to the county judge of Seneca county to compute and ascertain the amount due and to become due to each of the plaintiffs on the said bond and mortgage, and also to compute and ascertain the amount due thereon to the defendant Coe Swarthout. The other defendants are to be at liberty to show, before the referee, and have allowed, any payments which may have been made to either of the plaintiffs, or to Coe Swarthout, since they respectively arrived of age, which ought to be applied upon their respective shares in the bond and mortgage, and apply the same thereon. But the referee is not to allow anything for expenditures by James Swarthout in the support or education of his children while under age. And the decree is to contain the usual provisions for a foreclosure and sale of the mortgaged premises for the amount found due to the plaintiffs and Coe Swarthout, upon such reference, and for plaintiffs' costs, and for the payment, by James Swarthout, of the deficiency, if any, after such sale.

The mortgaged premises to be sold in parcels, and in the inverse order of alienation; that portion mortgaged to Dodge, (and not embraced in the mortgage to Charles A. Jackson, or the deed to Jonas S. Larawa,) to be first sold. If that is insufficient, then the portion mortgaged to Jackson to be sold; and lastly, that deeded to Larawa, if necessary."

A decree having been entered in pursuance of this opinion, a rehearing was granted at the instance of some of the defendants, which was brought to argument at the Cayuga general term in March, 1849.

*W. Curtis Noyes*, for the trustees and special and general receivers of the N. A. Tr. and Banking Co.

*T. R. Strong*, for the Chemung Canal Bank.

---

Swarthout *v.* Swarthout.

---

*S. Blatchford & S. A. Goodwin*, for plaintiffs.

The opinion of the court at general term was delivered by

WELLES, J. The mortgage given by the defendant James Swarthout, to the plaintiffs and Joseph H. Swarthout, Barna Swarthout and Coe Swarthout, dated December 16, 1829, was, in my opinion, well executed and delivered, and was a valid security for the benefit of the mortgagees. It was given to secure money borrowed by the mortgagor, of Hunt, the plaintiff's grandfather, and the note given by the mortgagor to Mr. Hunt for the money, was given up to be cancelled upon the execution of the bond and mortgage. The taking of the bond and mortgage to the grandchildren constituted a valid gift to them of the amount secured to them respectively, upon their coming of age. The more important question is whether the satisfaction of the mortgage by Miller, as guardian of the mortgagees, was valid and effectual.

The petition presented to the vice chancellor of the 6th circuit assigned two reasons for his appointment; 1st, that John Maynard, with whom the bond and mortgage were left, contemplated removing to the west, and was desirous of being rid of his trust as depositary of the bond and mortgage; 2d, that James Swarthout had made sale of the mortgaged premises and had agreed to make a clear title to the purchaser, and wished to have the mortgage removed and cancelled, and the moneys secured on other property which he had purchased. The petition prayed for the appointment of a guardian to take charge of the property and estate of the infant petitioners. The order appointed Miller guardian for the infants, for the purposes in the petition and thereinafter in said order mentioned, upon his giving the required security. The order then proceeds as follows: "And it is further ordered that the said guardian be, and he is hereby authorized to release, discharge and cancel the said bond and mortgage mentioned in the said petition, *upon receiving from the said James Swarthout a bond and mortgage upon unincumbered real estate of sufficient value to be ample security for the*

*amount due to the said infants, conditioned to pay to each of said infants,"* &c. And the order required the guardian to make a report of his proceedings, &c.

These proceedings before the vice chancellor, to say the least, are very strange and unusual. If it were true that Mr. Maynard contemplated removing to the western states, it might be a reason for appointing a general guardian for the infants, for the single purpose of being the holder or depositary of the securities belonging to the infants. No other good reason for even that measure was alledged in the petition. It is unaccountable that some reference was not made to Mr. Maynard, to ascertain whether he desired to have some one, besides himself, take and hold possession of the bond and mortgage, or that some prudential reason existed for having the possession of them changed. He was the individual selected by the author of this bounty to his grandchildren, as a fit and proper person to have the custody of the securities which he had caused to be taken. It turns out that the idea that it was necessary to have a guardian appointed for that purpose was trumped up in order to fortify the application and to give the proceeding a semblance of propriety, and for the purpose of securing what we can not fail to see was the leading, if not the only object, to wit, the satisfaction and discharge of the mortgage. Mr. Maynard swears that he has no recollection of ever having expressed a desire to deliver up the mortgage in consequence of a purpose of removing to the west, for the reason that he never had come to any fixed determination of so removing, although he did, at one time, talk of doing so. If the order had gone no farther than to provide a custodian of these securities, it would perhaps have been well enough. That part of it which authorizes the cancellation and discharge of the mortgage of record is the most remarkable. This gift of Mr. Hunt to his grandchildren was securely and most judiciously invested under his own direction. The objects of his bounty, as he had a right to suppose, were all safely secured upon their respectively arriving at the age of twenty-one, in the receipt of their respective shares, and the effect of this proceeding, even if the directions of the order had in all respects been complied with,

was to disturb the arrangement and render the security less satisfactory; at least to leave its sufficiency to the discretion of the guardian. The mortgage was upon rising of 300 acres of unincumbered land in Seneca county, the title to which was unquestionable, estimated in 1838 to be worth $60 an acre, over and above the buildings. The aggregate amount secured by the mortgage was $6912. This most abundant security to these infants was, by this order, to be released upon the guardian taking security on other real estate. True, the order provided that the new security should be ample, but who was to be the judge of its sufficiency? The court did not even reserve the power of deciding. I do not regard it a sufficient answer that the guardian was required to give bonds, as mentioned in the order. In case he had taken the security as contemplated, and that had been injudicious, and had turned out, for any reason, insufficient or even worthless, the obligors would not have been liable unless in case of bad faith or gross carelessness on the part of the guardian. Besides; the security given by the guardian was only personal, which, in this changing world, is found to be very uncertain when it is to run for a series of years, whatever appearances, or the actual state of things, may be at the time it is taken; as this case fully illustrates.

The great objection to the proceeding is, that in no possible aspect could it have benefited the infants, and was solely for the benefit of other persons; and that its only effect upon the infants would be to put their interests in jeopardy. It may be that the court of chancery had the power to make the order in the shape we find it. If it had, it was a power inherent in the court as *parens patria* in the care and management of infants—and not by virtue of any statutory provision. It will be unnecessary here to discuss the question of jurisdiction; as the view I am about to take will supersede it. If the order, authorizing the guardian to discharge the mortgage, was within the jurisdiction of the court of chancery, and for the purposes of this case I shall assume that it was, then its propriety can not be here assailed, whatever may be the consequences to the plaintiffs. But if the power conferred upon the guardian to discharge the mortgage

Swarthout *v.* Swarthout.

was conditional, the performance of the condition was essential to the validity of the exercise of the power.

The order authorizes the guardian to release, discharge and cancel the bond and mortgage, upon receiving from James Swarthout a bond and mortgage upon unencumbered real estate, &c. It seems to me that it can not admit of a doubt that before the guardian could have any power to act under this provision, he must have received the bond and mortgage, according to the directions of the order. It is averred in the bill that the new security, contemplated in the order, was never taken, and there is no proof in the case that it was. If it was not taken, it follows inevitably that Miller, in assuming to discharge the mortgage, acted without authority, unless he possessed the requisite power independent of the particular provision which assumes to confer it. If so, it was by virtue of his general powers as general guardian.

Admitting that as general guardian he could discharge this mortgage, provided the order had been silent in relation to it, and had given no directions on the subject, I think the fact that the order gives special directions in relation to the power in question, amounts to a restriction of the power; and that the fair and reasonable construction of the order is, that the power to discharge the mortgage was connected with a condition precedent, that the moneys should be first secured upon other property, according to the provisions of the order, before the guardian would be authorized to discharge the mortgage. This construction, I think, derives support from the consideration that the leading and principal object of the proceeding before the vice chancellor was the cancellation of the mortgage. And in making an order to effectuate that object, the court required the taking of other security before the mortgage should be discharged. The guardian in this case was constituted a special agent as respected the discharging of this mortgage, with limited and conditional powers; and his acts were not binding upon the infants, who in this respect were his principals, unless his powers were strictly pursued.

With respect to the question whether the condition was per-

formed, it is claimed that the trust of a guardian is an office, and that in the absence of proof to the contrary it will be presumed that he has done his duty and taken the security required by the order. I doubt very much whether the rule of presumption referred to ever applies to a case like the present. The guardian is a mere trustee, and in my opinion neither he nor those claiming under him, or claiming a benefit from his acts, has any right to protection under the rule. That where the validity of his acts depends upon the performance of a condition precedent, it must be proved, as much as in any other case. To hold that upon this question the burthen of proof was upon the plaintiffs, would be virtually a denial of justice. How would it be possible for them to prove affirmatively that the security was not taken? The order did not restrict the guardian as to the place where the land should be situated upon which the new security was to be taken; not even to the state or territory—while if it was taken, it was a fact which might easily be shown, or might have been ascertained at the time the subsequent conveyances and incumbrances by Swarthout were made.

Again; the discharge, as well remarked by Mr. Justice Hoyt, in his opinion in this case, on its face did not show that the security had been taken. On the contrary, it recited that the money had been paid to Miller on the bond and mortgage. The payment of the money was not a compliance with the order. He had no right to receive the money and discharge the mortgage. It would have been breaking up the investment made by Hunt for his grandchildren, and defeating his benevolent purposes, and was not the intention of the court in making the order. But I apprehend it is not seriously contended that any money was in fact received by Miller as guardian. The idea would contradict the whole history of the case. The certificate of the clerk of Seneca county can not help the defendants. Upon a proper search being made, this mortgage would be found. It would be seen also that the satisfaction was by a person other than the mortgagee. Common prudence would lead to an inquiry as to his authority to satisfy it. The person making the

search would see that in making the certificate of satisfaction, Miller acted as guardian of the infants, and would be bound at his peril, to see that he was duly appointed guardian by a court or officer having power to make the appointment. If he could not find out who appointed him, he should presume he was a usurper, and acted without authority. If he found the order of appointment, he would then have full notice of the condition of the authority to release the mortgage, and would be bound to know that the law adjudged the satisfaction void unless the other security was taken.

The certificate of a county clerk respecting title and incumbrances is generally regarded reliable evidence of the facts it contains. Its value, however, depends upon the accuracy and faithfulness of the officer, and is binding on no one.

. Upon the whole, I am satisfied with the decree made by Justice Hoyt at the special term, and think it should be affirmed, with costs.

Decree affirmed.

---

SAME TERM.  *Johnson, Welles, and Selden,* Justices.