Green, J.,
delivered the opinion of the court.
This bill is brought by the complainants, as Executors of the last will of A. H. Montgomery’ deceased, against the defendants, heirs of Samuel L. Story, deceased, to divest them of the legal title to three lots in the town of Pikeville, which they allege were sold under a decree of the chancery court, as the property of the said Samuel L. Story, and purchased by their testator, the said A. H. Montgomery.
It appears from the record, that Samuel L. Story, died in Bledsoe county in September, 1839, and that A. H. Montgomery and Euphemia P. Story administered on his estate. *76 The administrators filed their bill, in the chancery court at Pikeville, in September, 1840, suggesting the insolvency of the estate. The statement of the bill is, that it is filed “on behalf of themselves, as administrator and administratrix, as aforesaid, as well as on behalf of Euphemia P. Story, widow, and Mary Story, Emily Story, Lavinia Story and Matilda A. Story, children under age, and heirs at law of the said Samuel L. Story, deceased, against the President and Directors of the Hiwassee Railroad Company, the Planters’ Bank of Tennessee,” and other creditors of the said Samuel L. Story.
At the March term, 1841, of the chancery court, it was ordered in this cause, “ that James A. Tulloss be appointed guardian to answer for Mary Story, Emily Story, Lavinia Story and Matilda Story, infant children of Samuel L. Story, deceased, who appeared in open court and filed an answer for said minors.” The answer of Tulloss, as guardian ad litem, of said infants, states that' they know nothing of the matters and things charged in the bill, and submit their equities and interests to the conrt
At the same term of the court, an order was made appointing commissioners to lay off the widow’s dower, and the clerk was ordered to report an account of the assets in the hands of the administrators.
At the September term, 1841, the previous order of reference was renewed. At the March term, 1842, the commissioners appointed to assign dower reported, and their report was confirmed. The Clerk and Master also made a report which being excepted to, the exceptions were allowed, and the report set aside ; and the Master was ordered to re-state the account, and report at the next term. At the same time, he was also ordered to sell the said lots, subject to the widow’s dower.
At the September term, 1842, the Clerk and Master rc- *77 ported that he had taken the account as ordered, and he also reported that he sold the said lots, on the 1st Monday of June, 1842, to Alexander H. Montgomery,, he being the highest and best bidder, for the sum of $421 00.
This report being unexcepted to, was in all things confirmed. Subsequently the money bid by Montgomery was paid into court; and has by its order been retained in the hands of the clerk until further order. No decree was made in that cause, divesting the heirs of Story, of the title to these lots, and vesting it in Montgomery; and he having died, his executors bring this bill, to effectuate the said purchase, and to divest the title out of the defendants, who are heirs of Story.
The question upon these facts is, was the sale, by the commissioner, under the decree of the court, a valid sale ? And we think it was not, for two reasons.
1st. In the first place, the heirs of Story were not parties to the suit, in which the decree ordering the sale, was made.
It is true they are named in the bill, but not in such a way as to make them parties, It is stated in the bill that the administrators file the bill, “ as well on behalf of themselves, as on behalf of Euphemia, the widow,- and Mary, Emily, La-vinia, and Matilda Story, the heirs of said Samuel Story.” This statement does not purport to .make the heirs parties, but the administrators alone speak, and they say, they act on behalf of the heirs.
The act of 1837-8, chap. 3, sec. 3, expressly provides, “that when there is real estate, which belonged to the testator, or intestate, the devisees or heirs, or others interested therein, shall be made parties.”
To comply with this statute, the heirs should have been named in the bill as defendants, and process should have been prayed against them.
The order appointing a guardian ad litem, and the answer *78 put in by him., do not make them parties. The order of the court does not purport to make them parties,-but is the mere appointment of a guardian ad litem, upon the mistaken supposition, that they were regularly parties to the suit, when in fact, there was no suit to which they were parties, and to which the appointment was applicable.
The answer put in by the guardian ad litem, did not make them parties, and dispense with the necessity of the service of process. A guardian ad litem, cannot by his consent make his ward a party to a suit. And although, if a party who is sui juris, voluntarily appear, and file his answer to a bill, it will be a waiver of the service of process, and he will be held to be a party, yet such a result does not follow, where the answer of infants is filed by a guardian ad litem.
It is true, this court held in the case of Wallace vs. Hannum, 9 Humph. R., 129, that a guardian ad litem, might, for the benefit of the heirs, waive the service of a copy of a declaration in ejectment, on himself; but that he could not submit the cause to arbitration. The court say, “he is to defend the suit in the court from which he derives his authority, according to the rules and principles of law applicable to the case, as administered in that tribunal, and in conformity with the-ordinary mode of trial and practice of the court in similar cases. It is not within the scope of his authority, or duty, to consent to change the tribunal for trial, or that the decision shall be upon principles other than those applicable to like cases in the forum, in which the suit is pending. His special and restricted power admit of the exercise of no such discretion.”
The act of 1784 required, that a scire facias, should be served on heirs, before the real estate descended. could be subjected to the debts of the ancestor; and if there was a guardian, that it be served on him also. And so strict was the construction of this act, that it wqs held, that a service on *79 the guardian alone would not be sufficient, but that there must also be actual service on the infant wards, or the judgment was void, and the purchaser took no title.
.Now, although by the act of 1827, chap. —, and the act of 1837, chap. 3, the creditor’s remedy against the real estate of an insolvent deceased debtor, is greatly simplified; yet, both these acts require that the heirs shall be made parties to the proceeding, and this' must be done by the regular process of the court.
In this case, they are not parties, either by the statement or prayer of the bill, and-we have seen the answer put in by the guardian ad litem,, did not make them such. The decree and sale, therefore, were for this reason void.
2d. But the act of 1837-8, authorizes the sale of the real estate, only in cases “where the personal estate is ascertained by the report of the Clerk and Master, and the confirmation thereof by the court, to be insufficient for the payment of the debts, of the estate.” In such case the court is to direct the real estate, or so much thereof as is necessary, to be sold for the payment of the debts.
In this case, the real estate was sold, before any account was taken, or report of deficiency of personal assets, confirmed by the court.
The sale was, therefore, plainly unauthorized by the statute, and was ordered at a time when the court had no jurisdiction to make the decree. That the Clerk had, previously to this decree of sale, stated an account, and reported the same, is nothing; because that report was excepted to, and set aside, and was, therefore, as if it never had been.
Nor can the subsequent report, confirmed by the court, validate the sale previously made. If void when made, the subsequent ascertainment of facts, upon which a valid decree might have been made, could not cure that which was void.
*80 For these reasons, we are of opinion that the testator of the complainants acquired no right to this property by^the purchase, and that they have no equity against the defendants. . •
Dismiss the bill.