# NEW YORK SUPERIOR COURT.

PATRICK O'REILLY agt. EDWARD KING.

The court in the exercise of its *equity* powers will not compel an unwilling purchaser to take a *doubtful title.*

But at *law,* where a party seeks to disaffirm and rescind a contract of sale, and to recover back the deposit of his purchase money on the ground of a defective

title, he must satisfy the court that the title is *absolutely bad,* before he can recover. A merely doubtful title will not do.

The supreme court acquires jurisdiction of proceedings for the sale of the real estate of *infants,* on their application by their next friend *orally.* The form of the application is of no consequence if the substance is given. The material question is, did the infants apply by their next friend.

The fact that a *next friend* is a *creditor* of the infants, does not disqualify him from acting in that capacity, on an application for a sale of their real estate.

And where the *next friend* is described as being the *uncle* of the infants, and only male relative of full age, he is by such relation a suitable person to apply for a sale of the infants' real estate.

An objection that the *special guardian* of the infants entered into a contract of sale conjointly with the adult owners, and that the deed tendered to the plaintiff, was in like manner executed by the guardian jointly with the other owners, was without foundation. That other parties owning other interests joined in the same *contract and deed,* could not deprive either instrument of its binding effect upon all concerned.

*General Term, February,* 1865.

*Before* ROBERTSON, *Ch. J.,* MONELL *and* GARVIN, *Justices.*

THIS was an action to recover a deposit of $600 made upon a contract for the purchase of two lots of land. The contract provided that if the title on examination should prove insufficient, the deposit should be paid back. The objection to the title was that certain proceedings in the supreme court for the sale of the interests of infant owners were defective.

J. E. PARSONS, *for appellant, defendant.*

J. E. BURRILL, *for respondent, plaintiff.*

By the court, MONELL, J.   I am unable to subscribe to the views of the learned chief justice, that the title offered to the plaintiff was insufficient, and so doubtful that he had a right for that reason to disaffirm the sale and recover his deposit.   If the action had been on the equity side of the court to compel Reilly to take the title, I should express my opinion of its sufficiency with much hesitation.   The difficulties suggested by the chief justice would of themselves, cause me to hesitate and perhaps to doubt.   But the action is at law to recover back the deposit upon a recision of the contract of sale.   And I think the error of

the learned judge was in applying the rule in equity instead of the rule at law to a question involving the sufficiency or goodness of a title to real property. The court, in the exercise of its equity powers, will not compel an unwilling purchaser to take a doubtful title.

Much discussion has been had as to what is a doubtful title. If the court is fully informed of the facts, it must know whether a title is good or bad. If the facts are not fully disclosed, it may with propriety doubt. It is, however, with practical certainty and practical doubts that the court must deal. In the language of Lord HARDWICKE (*Lyddal* agt. *Weston*, 2 *Atk.* 20), " the court must govern itself by a moral certainty, for it is impossible in the nature of things, that there should be a mathematical certainty of a good title." Where the doubt of the sufficiency of the title is reasonable and practical, the court in its discretion will excuse performance by the purchaser. The rule, however, at law, is quite different. There the party disaffirming the contract must satisfy the court that the title is absolutely bad, and the court must decide that it is absolutely bad, before the party can recover. A merely doubtful title will not do (*Romilly* agt. *James*, 6 *Taunton*, 263).

The question then arises, whether upon the facts in this case the title offered by the defendant is bad. That is the question to be decided in this case. I pass over all of the objections to the title except three, being satisfied, for the reasons so well expressed by the chief justice, that they are really groundless. The first objection I shall notice is, that it is doubtful whether the supreme court acquired jurisdiction of the proceeding to effect a sale of the infants' interests. The power of the court to authorize the sale of the real property of infants is derived from the statute, and is not inherent in the court. Hence the statute must be strictly followed, and its terms fully complied with. The language of the statute (2 *R. S.* 194, § 170,) is : "Any infant seized of any real estate   *   *   *   may by his next

friend  *  *  *  apply to the court  *.  *  *  for the sale," &c.

The petition before us was by Isabella R. Cochran, &c., infants over the age of fourteen years, and Caroline Ella Cochran, &c., infants under the age of fourteen years, " by Bayard Clark,  *  *  *  their uncle and next friend, and only male relative of full age." The petition is signed by Bayard Clark, without any addition to his name of next friend, as respects the infants over the age of fourteen years, and by all the infants in person. There is nothing in the statute prescribing the manner in which an infant may apply to the court. And I see no reason why he may not by his next friend apply orally. The courts have established rules on this subject, but they are mere rules, which the court may in its discretion, at any time disregard (*Dorcas* agt. *Bungham*, 6 *Car. & Payne*, 248). The late court of chancery at an early day, adopted a rule on this subject, which subsequently became and continued the 158th standing rule of that court, and which required the application to be made by petition, prescribing its contents. But there is no doubt that the court may, in a given case, depart from the rule, and allow the application to be made in some other way, and I can see no reason why it may not be made orally, although it probably would not be wise to allow such a practice. The material question is, did the infants apply by their next friend ? The form of the application is of no consequence, if the substance was there. The description in the petition is clear : " The petition of, &c., by their next friend." No one can doubt, I think, that this was the application of the infants by their next friend, as required by the statute. And the supreme court having determined that it was sufficient in substance, the mere departure from some prescribed form or rule of court would not affect the jurisdiction of the court over the application. The case of *Hyatt* agt. *Seeley* (11 *N. Y. R.* 52), is not opposed to this view. In that case the order authorizing

the sale directed the deed to be executed by the guardian "in the name of the infants." It was executed by the guardian with the designation of guardian, &c., without naming the infants in the body of the deed or elsewhere. But the court intimate that if the deed had purported in its commencement to be made by the infants, it would have been sufficient. Besides, that was an application to the equity side of the court to compel the purchaser to take the title.

Second. It is objected that the application by Bayard Clark, as the next friend of the infants, was improper. The objection, however, was chiefly that he was a creditor of the infants. That was not an adverse interest, and nothing short of an interest in opposition to the interests of the infants in the property sought to be sold, would disqualify even a special guardian. The statute does not tell us who is the next friend, nor how he is to be selected or appointed. The 158th rule of the late court of chancery said some relative or friend might make the application, and in one case (*Matter of Whitlock*, 32 *Barb.* 48,) the mother was deemed a suitable and proper person. In this case the next friend is described as being their uncle and only male relative of full age. I cannot doubt that so near a blood relation is the next friend within the meaning of the statute. Infants being *non sui juris*, cannot act for themselves, and the policy which requires the interposition in their behalf of a next friend, is fully met by the presumption that the person selected will from motives of love and affection, be desirous to promote and preserve their interest, and the next friend may therefore well be considered the near friend. I can but believe that any one may be the next friend, but it is the duty of the court as the universal guardian of the persons and estates of infants, to scrutinize closely the qualifications and disinterestedness of those who present themselves as such.

The supreme court having entertained the application,

we must presume that they were satisfied that the next friend was a suitable person to apply for the infants. And as the statute does not disqualify him, I cannot see how any question can seriously be raised against the validity and regularity of the proceedings in that respect.

Third. The objection that the special guardian of the infants entered into a contract of sale conjointly with the adult owners, and that the deed tendered to the plaintiff was in like manner executed by the guardian jointly with the other owners seems to me to have no foundation. The guardian could neither agree to sell, nor could he convey any other than the infants' interests. The order authorized that and no more, and to that extent and no further, did the guardian agree to sell, or did he convey. That other parties owning other interests, joined in the same contract and deed, could not deprive either instrument of its binding effect upon all concerned.

In looking throughout these proceedings, I have not been able to detect any departure from the statute. There has been, it seems to me, not only a substantial but a literal compliance with its terms. If there was any departure, it was from some rule or prescribed form of court, unessential (except as preserving uniformity in practice), and subject to change at any time, but in no way impairing the validity of the proceeding. The contract provided that if the title should be found to be "insufficient," the deposit should be returned. No greater signification can be given to the word "insufficient," than its natural meaning, namely, that the title should be adequate, and such as should suffice and be equal to the end of vesting a good title in the purchaser. The parties doubtless meant that if the title was defective, and the purchaser would not get a good title, the contract should be at an end. But they did not mean, nor are the words used capable of the meaning, that the title should be absolutely and mathematically proven to be good. In any aspect I can view the case, I cannot conclude that the

title is bad, or even that there is, as was said by Baron ALDERSON (*Cattell* agt. *Corrall*, 4 *Y. & C. Ex.* 237), " a reasonable, decent probability of litigation " about it.

I am, therefore, of opinion that the conclusion of the chief justice was erroneous, and that the judgment should be reversed and a new trial granted, with costs to abide the event.

ROBERTSON, Ch. J., *dissenting*. I have not been able to satisfy myself from anything advanced before us, of the absence of all obligation on the part of the defendant to restore to the plaintiff his deposit. There seems to be no doubt of the title to the land in question of the parties on behalf of whom, as vendors, the contract in question was made. Without reference to the minority of some of such vendors, the pendency of proceedings to authorize some disposition of their interest, and the authority given to a special guardian, to sell or mortgage as he should think fit, and laying out of view the fact that it was made by an agent, it appears on its face to be a mere contract by owners of land to sell and convey it, giving a good title therefor by a certain day. By introducing such extraneous facts, not noticed in the contract, it is sought to be converted into a mere contract by the defendant or his principals, to procure a conveyance of a good title by a certain day, which, of course, would be entirely speculative. To accomplish this, the condition of the return of the deposit in case of the insufficiency of the title on examination is brought down to a mere absolute failure of title. The procuring of an order from a court authorizing the execution of a conveyance two days before the time for delivering it expired, and a tender of such conveyance one day before that time, is claimed to be a compliance with such contract, although no time was thereby afforded for any examination of the title at all. Both parties on the contrary, treated the examination spoken of as one to be commenced forthwith, when of course the infancy of some of

the vendors, the inchoate condition of the authority to the special guardian, and the alternative character of the disposition thereby authorized as being to sell or mortgage, might be discovered. Nothing short of prophetic power in such case would have enabled the plaintiff to discover on his examination of the title, whether the supreme court would or not authorize a sale, and confirm the contract in question. The fact that they did so, has no bearing on the question whether the title thereby to be acquired was that to investigate which the plaintiff was entitled, as well as to a reasonable time for the purpose of discovering its sufficiency. I apprehend that the only legitimate construction of such contract according to its terms, is that the vendors therein named undertook that they had a good title, which they would be ready to convey on or before the succeeding first of November, into an examination of the sufficiency of which the plaintiff could forthwith enter. And the legal result of it was, not that the plaintiff was bound to wait until the succeeding first of November to ascertain whether a title could then be acquired, which he was bound to take without examination, provided it should eventually prove good, but that if on an immediate examination he could find no one authorized to give him a title, he could rescind the contract and recover back his deposit. Under the contract there was no one from whom the plaintiff could at any time demand a conveyance, and the defendant could retain his deposit until at least the first of November, and then pay it back to him, and thus rescind the contract.

I cannot but regard the word "insufficient," as applied to the title in this contract, as meaning something more than defective. The warranty of a good title, implied in every sale of lands (*Burrell* agt. *Jackson*, 9 *N. Y. R.* 535), was already inserted in express terms. And it was stipulated that "if the title should on examination be found insufficient," the deposit, with interest, was to be returned. Some act of examination was necessary, which was to be

done by the plaintiff, and the word "insufficient," as expressive of its result, did not describe an absolute but a relative defect, having regard to some purpose or consequence. Taken in connection with the examination to be made, it probably was used in a sense similar to unsatisfactory to the plaintiff as a purchaser, that is, one to which a reasonable objection could be made, with which the party ought not to be satisfied (*Faven* agt. *Davison*, 2 *Duer's Rep.* 158), and not as an absolutely bad title, or none at all. I think, however, that the making of the contract for vendors incompetent to convey any title, the title proposed to be given by a guardian appointed in a judicial proceeding, whose authority to sell rested entirely on the future discretionary action of the supreme court in which such proceeding was pending, and against whose neglect or omission the plaintiff had no redress, and the character of the contract being a sale not yet sanctioned by the court in question, and, therefore, not binding on the supposed vendors, formed reasonable grounds of objection to the title, within the meaning of such contract. Such objection was substantially stated by the plaintiff on the tender of the deed. Upon either ground, therefore, that the contract was made on behalf of persons incompetent to convey, and was not a mere covenant to procure a title in future, or that no authority to convey was vested in any one, thus rendering the power of giving the title agreed to be given impossible, and of course any title that could be given to the plaintiff insufficient, I think he had a right to rescind it. If the examination of the title was to be made after the acquisition of authority to convey, I think the objections specified in my opinion at special term were good grounds for rescinding the contract, as rendering the title insufficient within its meaning.

I think the judgment should be affirmed.