THE METHODIST EPISCOPAL CHURCH HOME, Appellant, *v.* WILLIAM N. THOMPSON, Respondent.

*Court of Appeals, January* 17, 1888.

Affirming same case, 52 N. Y. Super. 321.

1. *Title.   Reasonable doubt.*—No fair, reasonable or just doubt is thrown upon the title to premises, where a clear title from the early governors of New York down to the present time with a continuous possession from 1836 to 1866, and no evidence of any possession since that time by any one adverse to this paper title, is shown.

2. *Same.   Recover back purchase money.*—To maintain an action to recover the amount paid on account of a contract for the purchase of certain real estate, it is not necessary, it seems, to show an absolutely bad title.   A reasonable doubt as to the vendor's title, such as to affect the value of the property, and to interfere with the sale of the land to a reasonable purchaser, will sustain the action.   This rule obtains as well where the vendee sues to recover back the price paid, as when the vendor sues to compel performance.

Appeal from a judgment of the general term of the New

York superior court, affirming a judgment in favor of the defendant.

*William F. MacRae*, for appellant.

*J. A. Beall*, for respondent.

PECKHAM, J.—The plaintiff brings this action to recover the amount paid to the defendant on account of a contract for the purchase of certain real estate.   The payment was made as a percentage upon the contract price for the purchase of the land, the balance of which was to be paid as provided for in the contract.   The action was brought on the ground that the defendant could not give a good marketable title to the land in question.

The property consists of several lots on what is now Fourth avenue, between Eighty-eighth and eighty-ninth streets, in the city of New York.   The plaintiff in its complaint alleges that there was a defect in the title; and to maintain the allegation on the trial of the action put in evidence the following papers: Deed from Patrick McKay to Elemuel Sheldon, dated October 2, 1818, which deed conveyed over seven acres, including the premises in question, which formed, however, but a very small part of the seven acres; deed from Elemuel Sheldon to Peter Zeily, dated December 29, 1828; deed from Zeily and wife to Joseph Parks, dated March 2, 1830; will of Joseph Parks devising his estate to his executors to be disposed of as directed by the will; order of the supreme court dated the 19th day of February, 1868, changing the trustees; a copy of the complaint in an action brought by the heirs of Joseph Parks in the United States district court for the southern district of New York, in which they claim to recover possession of the premises against William N. Thompson, this defendant.

The plaintiff then called a witness who testified that he had found upon investigation in the register's office of New York a deed from Oliver Waldron, Jr., and wife to Patrick

McKay, dated the 7th of September, 1814, and that from a study of the maps and a consideration of the description in the deed, with which he was to some extent familiar, he thought the deed included the premises in question.

After proving the amount of money paid on the contract and the fees and expenses for examining the title and interest, the plaintiff rested, without proving any possession on the part of any one mentioned in the deeds above described, of any portion of the premises mentioned in such deeds.

The defendant then took the case and proved a complete paper title down to the present time, from a patent, dated in May, 1666, granted by Richard Nicholls, governor, etc., to the freeholders and inhabitants of Harlem; also his patent, dated the 11th of October, 1666, and the patent of Thomas Dungan, governor, etc., dated in March, 1686. He then proved possession under such title from 1836 up to 1866, when the three owners conveyed to Thomas Murphy, and there is no evidence of any possession since that time in any other than his grantees. Defendant also put in evidence the deed spoken of by the plaintiff's witness from Waldron, Jr., to McKay, and proved by a surveyor who surveyed the premises described in the deed that the land therein mentioned lay on the west side of Fifth avenue, by Ninety-first street, and all of it north of Ninetieth street, and no portion of it nearer that 1,200 feet from the premises in question. In answer to a deposition that was to be read on the part of the plaintiff, the defendant also proved that there could not be on the premises in question in this action a building that was not more than 300 or 400 feet west of Third avenue, and also, that a plot of ground 100 feet square and within 300 or 400 feet of Third avenue could not touch any part of this property.

The defendant then rested.

The plaintiff then proved by a grandson of Elemuel Sheldon, that in 1824 or 1825, there was some property in the

possession of his grandfather by a tenant under him and that the person from whom his grandfather got the property was Patrick McCoy.   He further testified that about that time (1824 or 1825), he in company with some of his family went to this property by landing where the Astoria ferry boat now lands, and went up to what is now Third avenue, then called the Boston Turnpike, and then west 300 or 400 feet and came to a house on the premises of which his grandfather was in possession by his tenant, and that a fence enclosed the premises about 100 feet square; that it was 300 or 400 feet west or west by northwest from the Boston Turnpike, or what is now called Third avenue.

It is to this evidence that the evidence of the defendant was addressed when he proved by a surveyor that a spot of ground 100 feet square and within 300 or 400 feet of Third avenue could not touch any part of the property in question.

This is all the evidence that the plaintiff gave of any defect in the title of the defendant

It will be seen that at most, it originated in a deed from McKay to Sheldon, covering seven acres or over; that there is no evidence that McKay was ever in possession of any portion of these premises, or that he had any title to them, and the case is absolutely destitute of any proof that any of the grantees of McKay ever had possession of a single foot of these premises, or indeed of any of the premises described in the McKay deed.

On the other hand, is this clear title from the early governors of New York down to the present time with a continuous possession from 1836 to 1866, and no evidence of any possession since that time by any one adverse to this paper title.

Upon these facts we have no hesitation in saying that there is not a fair, reasonable or just doubt thrown upon the title of the defendant to the premises in question.

We disagree with the court at general term upon the necessity in such a case as this of showing that the title is

absolutely bad.   We think that if there were a reasonable doubt as to the vendor's title, such as to affect the value of the property, and to interfere with the sale of the land to a reasonable purchaser, the plaintiff's cause of action would be sustained.   Hellreigel v. Manning, 97 N. Y. 56.

This rule obtains as well where the vendee sues to recover back the price paid as when the vendor sues to compel performance.

The case of Romilly v. James (6 Taunton, 263), has been cited as authority for a contrary holding.   This was an action brought to recover the deposit paid on the contract for the purchase of lands in fee simple upon the alleged insufficiency of the title.   The question was argued at length in the common pleas, and at the end the court took time to consider, but before doing so observed:   "It is said that the plaintiff will have made out his claim to recover back his deposit if a cloud is cast on the title.   That is not so in a court of law.   He must stand by the judgment of the court, as they find the title to be, whether good or bad; and if it be good in the judgment of a court of law, he cannot re-recover back his deposit."   The court subsequently held that defendant could give a good title, and hence ordered judgment in his favor.

We do not regard this case as authority for us in our union of legal and equitable tribunals, to hold that in such a case as this the plaintiff must show absolutely a bad title.

In the case cited the court held the defendant's title good, and hence ordered judgment for him, just as we hold here, that no doubt has been cast upon the defendant's title.   But the plaintiff was entitled to a good, marketable title, and if he did not get it, could maintain his action to recover back his deposit.

In Allen v. Atkinson (21 Mich. 35), COOLEY, J. said: (361)   "The vendee has an undoubted right to a good title and to a deed with proper covenants; and he has a right also to insist that the title should be a marketable one, not

open to reasonable objection." Citing Freetly *v.* Barnhart, 51 Penn. St. 279.

The case of Romilly *v.* James (*supra*), was the one upon which the superior court based its holding in O'Reilly *v.* King (28 How. Pr. 408), and this latter case was cited in the opinion delivered by the learned judge at general term in the case at bar. We think that case should not be followed.

But upon the ground that no such reaonable doubt exists in this case from the facts as disclosed at the trial, we think the judgment of the court below should be affirmed, with costs.

All concur.