Pillow v. Sentelle & Co.

---

· PILLOW v. SENTELLE & CO.

1. SUMMONS: *Service of.*
   Where there are two returns of service indorsed upon a summons—both of the same day—the first showing a service "by delivering a copy of the summons to each of the defendants," and the last specifically showing the manner of the delivery, which is defective, the two, though separately signed by the officer, will be taken to refer to the same transaction, and to qualify each other, and will show a defective service.

2. WARNING ORDER: *Proof of publication.*
   An affidavit of the publication of a warning order must show that the affiant was the editor, publisher, proprietor, or principal accountant, and must show that the order was published *weekly* four times.

Pillow v. Sentelle & Co.

3. PRACTICE IN CHANCERY:  *Appointment of guardian ad litem.*
A court can not appoint a guardian *ad litem* for an infant until after service upon him.

4. SAME:  *Answer of guardian for infant:  Requisite of.*
The answer of a guardian *ad litem* must deny every material allegation of the complaint, and be such as to require proof of them. It is not sufficient under the Code to express ignorance of the matters alleged, and put the infant defendant under the protection of the court, as under the old practice.

5. SAME:  *Parties necessary in bill to foreclose mortgage.*
The heirs of a deceased mortgagor are necessary parties in a suit to foreclose the mortgage.

APPEAL from *Lee* Circuit Court in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

*O. P. Lyles*, attorney for appellant.

*G. W. Sentelle*, for appellees.

EAKIN, J.   This suit was brought by Sentelle & Co., to foreclose a mortgage on land executed on the seventeenth of January, 1876, by Gideon J. Pillow, to secure a note to complainant for $5,531.68, due the fifteenth of December following.

In the title of the case, Mrs. Pillow is described as the widow and administratrix of the mortgagor. Fourteen others are named as defendants, but neither their character, nor interests in the subject-matter, are disclosed by the bill. Most probably they were sons and daughters of the mortgagor, with their wives or husbands, but we can not know this. They are not described as heirs.

1. SUMMONS: Service of.
A summons issued against M. E. Pillow, individually and as administratrix, in which was included Farguson and wife, Mary Gideon Pillow, Annie Payne Pillow, and Gideon Johnson Pillow. Upon this summons there were two returns, as follows : First:

"I have, this sixth day of March, 1879, duly served the

Pillow v. Sentelle & Co.

within, by delivering a copy of the same to each of the within-named defendants, as therein commanded."

The second was:

"I have, this the sixth day of March, 1879, duly served the within, by leaving a copy for Mrs. Pillow and her two children, with her stepson, Bob Pillow, and a copy for D. B. Farguson, with his wife, as therein commanded."

The ordinary presumption in aid of the acts of officers, that they have done their duty, can not be invoked to dispense with a clear showing of the facts which the law requires to be affirmatively shown. The Sheriff is required to state the time and manner of the service—to set out how he executed the command of the writ. (*Gantt's Digest, sections 4513, 4837.*) The first return standing alone, would be good. But the two returns standing together, although signed separately, describe events of the same date, and may be taken to refer to the same transaction, and to qualify each other. The last can not be rejected as surplusage. Its most obvious purpose was to make the former more specific, and to supplement it by showing precisely what was meant by it. This was not good showing of service. If the copies were not delivered in person, they should have been left at the usual places of abode of the defendants, respectively, "with some person who is a member of his family," over fifteen years of age. (*Gantt's Digest, section 4512.*) Neither of the copies appear to have been left at the usual place of abode of the defendant for whom it was intended. Besides, we can not know that the stepson was a member of Mrs. Pillow's family, or that either he or Mrs. Farguson was over fifteen years of age.

A warning order was made against the others, as non-residents, but there is no proper showing of publication. H. N. Word made an affidavit that the order was published four times in the *Marianna Index*, a newspaper published

2. WARNING ORDER:

Proof of publication.

in Lee County, the first being on the seventh, and the last on the twenty-eighth of March, 1879. But he does not disclose his character as connected with the paper. We can not judicially know him to be either its editor, publisher, proprietor, or principal accountant. Besides, the affidavit does not show directly that the order was published *weekly*. We can not know that the paper is published only weekly, and, from all the affidavit shows, it might have contained the notice on three successive days, and once again on the twenty-eighth. (See *Gantt's Digest*, section *4528*; and the *Act of February 15, 1875, section 4, Pamph., p. 153*. Really, however, the warning order is of no consequence, whilst the pleadings disclose no interest in the subject-matter, in any of the non-residents.

3. PRACTICE IN CHANCERY: Appointment of guardian ad litem. There were no parties defendant until Mrs. Pillow voluntarily appeared. She confessed the mortgage, and, by cross-bill, set up equities of her own in the land against the complainants and her co-defendants. A guardian *ad litem* was appointed for three of the persons who had been named in the summons, on the ground of their infancy. His answer for them discloses the fact that they are children of Mrs. Pillow. By their answer they express confidence in their mother, denying nothing, and submitting their interests to the Chancellor. It may be well to add that her claim was, if unjust, prejudicial to their rights.

4. SAME: Answer of guardian for infant: Requisites of. This was mistaken practice. The court could not appoint a guardian *ad litem* before service. (*Gantt's Digest, section 4494.*) If properly appointed, the answer was not such as the Code required. He had no right to let his wards rest in their confidence in their mother's intentions, or to throw them under the protection of the court, without making all issues of fact which might possibly inure to save some rights. This was allowable under the old practice, and is yet much used. But the Code has changed that, and now

the guardian *ad litem*, defending for an infant, can make no concessions. He should have denied every material allegation, both of the complaint and cross-complaint, prejudicial to the infants. (*Gantt's Digest, section 4578.*) This is an additional intrenchment of the rights of infants against a too easy confidence of the courts in the judgment and affection of near relations, and the courts should see to it that the guardian, who need not verify, and only files the answer *pro forma*, should, nevertheless, file such a one as would place the infant at arm's length, and require proof of every allegation affecting his or her rights,.as rigidly as if the. defendant were a stranger in blood, defending himself against a supposed wrong. The observation of every thoughtful attorney who has been many years at the bar, and watched the fortunes of families, will furnish many instances where, from want of this precaution, infants have been, figuratively, slaughtered with the best intentions. The guardian *ad litem* must not judge of the truth of the allegations.

It is impossible to gather from the transcript correct, information as to who were Gideon J. Pillow's heirs. This kind of inadvertence is not uncommon, and results generally from the fact that the attorneys are themselves so well advised of the relations of well known parties, that they do not require allegations as to that from their opponents, or overlook the omission. No evil generally results from that in the court below, where all proper matters may be orally conceded in argument, but it is very embarrassing to an appellate court, desiring to do substantial justice, and still confined to the transcript.

But the heirs were necessary parties, and, as the transcript appears, it was not proper, at that stage, for the court to hear the cause and pronounce any final decree. It was fruitless, since, save a mere dower interest of Mrs.

5. SAME: Parties necessary to foreclose mortgage.

Pillow, if she had any, nothing could be affected by its execution, and it would cloud the title of the heirs, and embarrass their right of redemption. "When a determination of the controversy between the parties before the court can not be made without the presence of other parties, the court must order them to be brought in." ᐧ(*Gantt's Digest, section 4481.*) The decree was premature, and, for that reason, it would not be proper here, and now, to consider the merits of the controversy between the original complainants and Mrs. Pillow. The heirs have a substantial interest in that, and must first be heard in the court of original jurisdiction. Although they would not be bound by the decree, yet, upon any effort to disturb their title, precisely the same controversy, as to all or some of the points, would have to be renewed. The equity practice would fail in its chief excellence, that wherein it most especially commends itself, if it did justice by piecemeal. Its pride is to bring in all parties interested in the subject-matter of the controversy, and to adjust all rights at once, and, so far as may be, permanently.

Reverse the decree, and remand the cause, with leave to all parties to reform their pleadings, and to bring in all parties in interest, in accordance with this opinion and the principles and practice in equity.