# COFFEY'S

# PROBATE DECISIONS.

### ESTATE OF CLARA HARRIS, DECEASED.

[No. 2,853; decided November 18, 1908.]

**Will Contest—Nature of Proceeding.**—The contest of a will is not a civil action; it is a special proceeding of a civil nature, and not subject, except as to the mode of trial, to the provisions of part 2 of the Code of Civil Procedure.

**Administration.**—Proceedings for the Settlement of the Estate of a decedent, and matters connected therewith, are not civil actions within the meaning of the Code of Civil Procedure, sections 392-395, nor within the meaning of section 15 of article 1 of the constitution.

**Guardians—Classes and Definitions.**—Guardians are either general or special; a guardian of the person, or of all the property of the ward within the state, being a general guardian, and all others being special guardians.

**Guardian Ad Litem—Appointment in Will Contest.**—Where the mother of minors who is their general guardian has no interest adverse to them, there is no occasion for appointing a guardian ad litem to represent them in a will contest.

**Will Contest—Pleading Unsoundness of Mind.**—If unsoundness of mind is relied upon in a will contest, it is sufficient to state that the deceased at the time of the alleged execution of the proposed paper was not of sound and disposing mind.

**Will Contest—Pleading Fraud and Undue Influence.**—When the grounds of a contest embrace duress, fraud, undue influence, or execution of a subsequent will, such matters not being ultimate facts, but conclusions of law to be drawn from facts, must be pleaded.

**Will Contest.—In Pleading Fraud the Facts must be Clearly** stated, so that the court may determine therefrom whether the charge is well founded.

**Will Contest—Injustice or Unnaturalness of Gifts.**—A will cannot be contested on the ground that it is foolish, unnatural, capricious or unjust.

**Will Contest.**—In Pleading Fraud and Undue Influence it is not sufficient to state the nature of the fraud and undue influence, but the facts should be alleged; and they should be stated with certainty and expressly connected with the testamentary act.

**Will Contest.**—Allegations of Fraud and Undue Influence should be as positive, precise and particular as the nature of the case will allow. The mere fact that the beneficiary had an opportunity to procure a will in his own favor or that he had a motive for the exercise of undue influence, does not raise a presumption of its exercise. Such exercise must be directly pleaded as bearing upon the testamentary act.

**Will Contest—Evidence of Undue Influence.**—The fact that the proponent of a will was the son of the testatrix and lived in the same house with her for years, and acted as her agent in certain business affairs, does not import fraud or undue influence. It may have afforded an opportunity coexistent with a motive, but the law does not presume, from the mere fact that there was an opportunity or a motive for its exercise, that undue influence was exerted.

**Will Contest.**—Undue Influence, in Order to Invalidate a will, must be such as to destroy the free agency of the testator at the time and in the very act of making the testament; it must bear directly upon the testamentary acts.

**Will Contest.**—The Facts Constituting the Cause of Action in a will contest should be stated in ordinary and concise language.

**Will Contest—Manner of Pleading.**—Under Our System of Pleading facts only must be stated. This means the facts, as contradistinguished from the law, from argument, from hypothesis, and from the evidence of the facts. Those facts, and those only, must be stated, which constitute the cause of action or the defense.

**Will Contest—Pleading Undue Influence.**—An allegation that influence was overpowering or that the testatrix was unable to resist, without the recital of the facts supporting such conclusion, is not sufficient.

**Will Contest.**—An Allegation that "Contestants are Informed and Believe" that a certain event occurred is not positive. The averment must be direct, although it may be based on such information and belief. The fact itself must be alleged in set terms.

**Will Contest.**—Allegations of Fraud Should State the Facts sufficient to constitute the fraud; otherwise a special demurrer will be sustained.

**Testamentary Capacity—Manner of Acquiring Property.**—Persons contesting a will may introduce evidence of the manner of acquisition of the property disposed of in the will, as bearing in some degree, however remotely, on the question of testamentary capacity.

Contest to probate of will; demurrer to contest.

Vogelsang & Brown, for demurrant.

Frank J. Sullivan, for contestants.

Galpin, Elkins & Frost, also for contestants.

COFFEY, J. Contestants insist that this court has jurisdiction where a guardian ad litem appears for minors and cites sections 372 and 373 of the Code of Civil Procedure and certain cases in support of this claim; but the supreme court, in the Matter of Carpenter, 75 Cal. 596, seemed to hold the contrary, saying that they did not think the provisions referred to applied to probate proceedings. At that time, however, section 1718, Code of Civil Procedure, was in existence, and there was no necessity for a guardian ad litem, if the trial court in a will contest exercised its power to appoint an attorney to represent minor heirs. In the Carpenter case the supreme court cited the Estate of Scott, 15 Cal. 220, and Ex parte Smith, 53 Cal. 204, to the effect that probate proceedings are not "civil actions," and the court repeated that they are not to be considered such within the purview of sections 372 and 373; but in the circumstances of that case the court thought the mere name or description of the officer of the court appointed was not material, since the purpose of the statute was accomplished and the rights of the infant protected by the appointee.

Since that decision, section 1718, Code of Civil Procedure, has been repealed, and now the court, sitting in probate, has no power to appoint an attorney to represent minor heirs, as such, and seems to be limited to the general laws of guardianship. Counsel for contestants say that section 1747, Code of Civil Procedure, prescribed that the "court may appoint a guardian of minors who have a guardian legally appointed by will." This is a misapprehension. The section says: "The court may appoint guardians of minors who have no guardian legally appointed by will or deed."

Estate of Cahill, 52 Cal. 52, in contestants' brief is a miscitation. The correct citation is 74 Cal. 52, 15 Pac. 364, in which the opinion was written by the same judge who decided

the Carpenter case later, in April, 1888. The precise point decided in the latter case was not raised in the former. The power of the probate tribunal was not challenged; it was only the regularity of its exercise. In the Carpenter case, the power of a court in probate to appoint a guardian ad litem under sections 372 and 373 was denied by the court; but the circumstances made the denial merely dictum, and it may now be considered as at least open to discussion, although the dictum may have attained the dignity of a decision of the appellate tribunal, since it has been followed in this forum up to the time of the case at bar, but the reasoning of the court still remains.

. The supreme court has determined that a contest of a will is not a civil action. It is a proceeding in probate, although by special provision (part 3, "Of Special Proceedings of a Civil Nature," title 11, "Of Proceedings in Probate Courts," chapter 2, article 2, sections 1312, 1313, 1314, Code of Civil Procedure), the trial must be conducted in the same manner as in civil actions. On the trial the contestant is plaintiff, and the petitioner defendant. This applies simply to the mode of trial, but it does not alter the nature of the case; it does not make this proceeding a civil action.

A civil action is an ordinary proceeding in a court of justice, by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense: Code Civ. Proc., sec. 22. Every other remedy is a special proceeding: Code Civ. Proc., sec. 23.

Part 2, Code of Civil Procedure, treats of civil actions. In this part is found the sections authorizing appointment of guardians ad litem. If there were any conflict between these parts or titles, the probate act must prevail as to all matters and questions arising out of its subject matter; but there is no such conflict, and, therefore, there can be no dispute that a will contest is a special proceeding of a civil nature, and not subject except as to the mode of trial, to the provisions of part 2, concerning civil actions. The term "special proceeding" is used in contradistinction to "civil action." This distinction is well recognized: In re Central Irr. Dist., 117 Cal. 387, 49 Pac. 354.

The proceedings for the settlement of an estate, and matters connected therewith, are not civil actions within the meaning of the practice act, sections 18 to 21 (corresponding to Code of Civil Procedure, 392-395; Estate of Scott, 15 Cal. 221), and it is manifest they are not a civil action within the meaning of section 15 of article 1 of the constitution of California: Ex parte Smith, 53 Cal. 207.

In substance, the supreme court so said in Estate of Davis, 136 Cal. 590, 69 Pac. 412, and in numerous other cases. In the Davis case, Mr. Justice Garoutte said that the character and extent of probate jurisdiction is a matter solely under legislative control, and the procedure by which that jurisdiction may be invoked and rights thereunder adjudicated is expressly laid down by the probate statute, and that that procedure must be followed or relief under such jurisdiction cannot be secured; that is to say, relief sought in probate must be dependent at all points upon the power conferred by the probate statutes. The same justice said in Re Flint, 100 Cal. 400, 34 Pac. 865, that a contest arising upon the probate of a will is a civil action within the meaning of subdivision 4 of section 1881 of the Code of Civil Procedure; but that was a point of evidence incident to the mode of trial, and in no wise affected the question of jurisdiction here suggested.

Contestants assert that the law is clear that the guardian ad litem is the proper person to act in this situation, for the mother's interest might be adverse to the minors; she might be the sole heir and wish to support a will obtained by fraud. Will it be argued that a guardian ad litem is not necessary in such case? If it be true in one, why not in all where a judge approves? Contestants argue that this construction is clearly the right one, and that the sections of the Code of Civil Procedure must be read together.

Counsel says that section 1307 prescribes that heirs may contest a will through guardians appointed by themselves, or by the court for that purpose. This is not the literal language of the statute which reads:

"Sec. 1307. Who may appear and contest the will. Any person interested may appear and contest the will. Devisees, legatees, or heirs of an estate may contest the will through their guardians, or attorneys appointed by themselves or by

the court for that purpose; but a contest made by an attorney appointed by the court does not bar a contest after probate by the party so represented, if commenced within the time provided in article four of this chapter; nor does the nonappointment of an attorney by the court of itself invalidate the probate of the will.''

Since the adoption of that section the power to appoint attorneys has been abrogated.

In this case, it appears that the mother's interest is not adverse to the minors, for it was on her petition that the appointment was made. Her petition alleged that the minors were under the age of ten years; that they were interested in the estate of Clara Harris, their grandmother, as the heirs of her son, Stephen Loring Harris, and that a guardian ad litem was necessary to defend their interests. Whereupon the court made an order appointing a guardian ad litem as prayed for.

Counsel for contestants contend that this order was valid and proper under section 373, Code of Civil Procedure, which is to the effect that a court appoints a guardian when an infant is plaintiff under the age of fourteen years upon the application of a relative or friend, and that this was the procedure here. The practice in all civil cases is to apply before the suit is filed to a judge to have a guardian ad litem appointed; then when the order is made, the suit in his name as guardian is filed with the county clerk. It is the same in probate cases, also, say the counsel, and it is necessary to allege appointment of guardian, citing Crawford v. Neal, 56 Cal. 321; but this was a civil action, and, as has been seen already, does not apply to probate matters.

Counsel for contestants further assert that there is no showing here that there is a general guardian, and as all the papers in the probate proceedings of Stephen L. Harris are destroyed, and as restoration of them has never been made, it must be assumed that the mother is the general guardian. This is not a legal assumption in these premises, and if it were, there would be no necessity of a guardian ad litem, her interest not being adverse or hostile, but friendly, as is established by her application in this instance; and, in that case, if she were general guardian, it would be proper for her to institute the contest on behalf of the minors as such general

guardian. She is the guardian by nature and for nurture, and, being otherwise competent, is entitled by appointment to the guardianship of the estate of the minor: Civ. Code, sec. 246; Lord v. Hough, 37 Cal. 669.

The fact and manner of the appointment should be pleaded so as to permit proof or traverse; although if the traverse were found to be true and the appointment held defective, the error could be cured by judicial leave to file a new petition and secure a valid order. At worst, this would be mere inconvenience and not operate a hardship to the infants. It is corrigible error, and does not necessarily invalidate the proceeding otherwise correct: Reed v. Ring, 93 Cal. 96, 28 Pac. 851; Foley v. California Horseshoe Co., 115 Cal. 195, 47 Pac. 42.

In ordinary civil actions a judgment against an infant where no guardian has been appointed is not for that reason void (Childs v. Lauterman, 103 Cal. 387, 37 Pac. 382), but it may be questioned whether that rule applies to a probate contest where the statute provides a saving clause for infants, allowing a period of one year after majority to contest the will: Code Civ. Proc., sec. 1333.

Ordinarily, the judgment is not void, but is merely voidable at his instance; it may be affirmed by him, and, as in the case of any other obligation that he has assumed during infancy which is susceptible of ratification, it will be considered as affirmed by him if he takes any action in reference thereto, after he becomes of age, which is consistent only with assuming its validity.

Counsel for contestants say that if this court have any doubt as to the power of appointment in probate of a guardian ad litem, they would prefer to test this point at once by an appeal, rather than go to trial and have the case reversed on the plea of lack of jurisdiction. Whatever doubt the court may have otherwise, the supreme court itself in the Carpenter case held that the sections depended upon by counsel did not apply in probate matters, while there was a statute providing for the appointment of an attorney to represent infants in such proceedings; but there is now no such statute, hence no power at all in probate except through a general guardian. Now, where the interest of the guardian in a particular matter

is contrary to that of his ward, or where he occupies a dual or duplex position, as, for instance, where he is simultaneously administrator and guardian, manifestly he cannot legally occupy these antagonistic attitudes. So far as general uses are concerned, the two situations are not necessarily incompatible; but if by reason of circumstances, as an attempt by the administrator to divest the title of the infant heir by a sale, under a probate order, of lands to pay debts of an intestate, his position became hostile to the infant, he could not represent the ward: Townsend v. Tallant, 33 Cal. 52. The minor then having no guardian quoad the petition, it became the duty of the court, before acting, "to appoint some disinterested person his guardian for the sole purpose of appearing for him and taking care of his interests." This was the language of section 159 of the old probate act; but these words are not to be found in section 1539 of the Code of Civil Procedure, which is the statute that superseded the old act. The present probate law mentions "any general guardian of a minor so interested," and so differs from the former.

The code, with characteristic brevity, declares that guardians are either general or special; a guardian of the person, or of all the property of the ward within the state, being a general guardian, and all others being special guardians: Civ. Code, 236-240; 2 Ross' Probate Law and Practice, 936.

Now, if the general guardian is adverse in interest, as in Townsend v. Tallant, 33 Cal. 52, above cited, although the language of the statute has been changed by the code, it should seem anomalous that the infant may not be protected by a special guardian with functions limited to the particular action or proceeding in probate, whether it be a sale of real estate, as in that case, or an application for the revocation of a probate of a will, as in the matter under advisement. Such a provisional order was made in a contemplated contest in the Estate of Robert P. Hastings, Deceased, at the instance of the former Judge Serranus Clinton Hastings, where the widow was executrix of the will and guardian of the minor, although this court questioned the technical power, yet it deemed it advisable for the protection of the infant to make the special appointment.

So in this case the court might act in like manner; but inasmuch as the interests of the mother and minors are not adverse, there should seem to be no similar reason for a special guardian, as she could be appointed general guardian and in that way protect the legal rights of the infants.

I choose, however, to pretermit this point for the present and to pass to the main grounds of demurrer, formally overruling the objections stated in paragraphs 1 and 2 of demurrer.

Paragraph 3 of demurrer is addressed to the sixth ground of contest, to wit, the allegation on information and belief that the alleged will and testament of decedent admitted to probate is not her last will, and was never executed by her because, "as they are informed and believe, the said original will was destroyed by fire in April, 1906." This averment is technically ill in form, because it should be direct and pleaded absolutely as a fact. The physical destruction of the original will by fire in and of itself would not operate to prove the nonexecution of the instrument propounded, nor to sustain an implication of forgery of the latter. Counsel for contestant in support of this allegation claim that, in connection with their fourth ground of contest, that there is here a distinct charge of forgery, but this is not as clear to the court as to the counsel.

In stating the grounds of contest, if unsoundness of mind is relied on, it is sufficient to state that the deceased, at the time of the alleged execution of the proposed paper, was not of sound and disposing mind; unsoundness is the ultimate fact to be found, and other causes are to go to the jury, from which they are to find, and the issue upon that subject is to be of the ultimate fact only; but when the grounds of contest embrace duress, menace, fraud, undue influence, due execution and attestation, subsequent will or the like, such matters, not being ultimate facts, but conclusions of law to be drawn from facts, must be pleaded, not in the language of the statute, but the facts (not evidence of the facts) relied on must be stated, and the issues relating thereto submitted to the jury, to the end that the court, either upon demurrer to the statement of the grounds of contest, or upon the verdict, may determine whether, as a matter of law, such facts so pleaded or found constitute a valid reason why the proposed

paper should not be admitted to probate. This course is plain, logical, direct, and is a certain guide to the court, to counsel, and to the jury; the other course leads to uncertainty as to what is relied upon, and to doubt as to what may be the basis of the verdict: Estate of Gharky, 57 Cal. 279.

The fourth "ground of contest" is a conclusion, and as such cannot be connected as a statement of fact with this sixth ground. Demurrer sustained as to the sixth ground of contest.

The count on fraud should be recast to correspond to the requirements of the code rules of pleading as interpreted by the supreme court. It is a well-known rule, says that tribunal, that in pleading fraud the facts must be clearly stated, so that the court may determine therefrom whether the charge is well founded: Estep v. Armstrong, 69 Cal. 538, 11 Pac. 56.

Counsel for contestants say that their pleading clearly states the facts of undue influence and fraud, "if forgery of a will is fraud." But there is no specific allegation of fraud.

It is urged that the will is unnatural as to the contestants; but that does not constitute a ground of opposition, and does not enter into the issue of fraud or undue influence. A testator of sound mind and free from restraint has a right to make a will, whether it be foolish, unnatural, capricious, or unjust: Estate of Donovan, 140 Cal. 394, 73 Pac. 1081; citing Estate of McDevitt, 95 Cal. 33, 30 Pac. 101, and Estate of Kaufman, 117 Cal. 289, 49 Pac. 192.

Counsel for contestants say in their brief under the head of "Fraud," that it is alleged that this will of May, 1902, is not the will of decedent; that the original will was destroyed by fire, and that the document on file was procured by the fraud of Lawrence Harris and Vogelsang & Brown, attorneys. Here, say counsel, is a distinct charge of forgery which is made to state a fact connected with the allegation not demurred to by proponents, namely, in paragraph 4: "That said alleged will is not the will of Clara Harris, deceased, and was never executed by her and was not her free act and deed."

Counsel for contestants say that the demurrer does not attack this allegation nor the allegation 5 which alleges that decedent in May, 1902, was incompetent to make a will.

As already seen, these allegations are assailed by the demurrants in their grounds 1 and 2, which have been formally overruled, although paragraph 4 is a conclusion, and paragraph 5 is subject to some slight verbal criticism as to its form. In the opinion of the court the facts constituting the alleged fraud on the part of proponent and the complicity of his attorneys are not stated with the particularity required by the authorities cited.

The terms of the charges are general, and not pointed to the act itself. It is not sufficient to state the nature of the fraud, undue influence, or fraudulent representations, but the facts should be properly alleged: Estate of Clark, Myr. Rep. 265. These facts should be stated with sufficient certainty and precision, and should be expressly connected with the testamentary act.

The cases cited by contestants are mainly upon the evidence required and the presumptions indulged and not upon the pleadings. The distinction between what is pleadable and what is probative may be difficult; but it must be observed according to all the authorities. It is quite possible to reconstruct this seventh ground of contest and free it from the objections advanced by the demurrer. The allegations of fraud and undue influence should be as positive, precise and particular as the nature of the case will allow. The mere fact that the beneficiary had an opportunity to procure a will in his own favor, or that he had a motive for the exercise of undue influence, does not raise a presumption of its exercise. Such exercise must be directly pleaded as bearing upon the testamentary act.

Ross v. Conway, 92 Cal. 632, 28 Pac. 785, relied upon by contestants, was a case of a spiritual adviser who employed an attorney and directed his conduct in concocting the documents disputed, and there were direct allegations connecting him in that confidential capacity with the execution of the instruments for the benefit of himself and his church. The question was whether he had used the influence which he had acquired over her by virtue of being her spiritual adviser for the purpose of procuring her to make such disposition of her property, and the court declined upon the proof to uphold the transaction. The supreme court very properly said that the influence which the spiritual adviser of one who is about to

die has over such person is one of the most powerful that can be exercised upon the human mind, especially if such mind is impaired by physical weakness, is so consonant with human experience as to need no more than its statement; and in any transaction between them wherein the adviser receives any advantage, a court of equity will not enter into an investigation of the extent to which such influence has been exercised. Any dealing between them under such circumstances will be set aside as contrary to all principles of equity, whether the benefit accrue to the adviser or to some other recipient who, through such influence, may have been made the beneficiary of the transaction. In such case the testatrix should have had independent advice and be at arm's-length with the beneficiary.

In the case under advisement the proponent was not a spiritual adviser, but a member of the family who acted in business affairs for the decedent, and it does not necessarily follow that his relation was such as to raise a presumption of undue influence, although evidence might establish that fact.

That he was her son and lived in the same house with her for years and acted as her agent in certain business affairs does not import fraud or undue influence. It may have afforded an opportunity coexistent with a motive, but the law does not presume from the mere fact that there was an opportunity or a motive for its exercise, that it was used, that undue influence was exerted, for it is not a presumption, but a conclusion from the facts and circumstances established by proof under the pleading.

The fact that the son transacted business as alleged is not of itself evidence of undue influence. Influence not brought to bear upon the testamentary act is not undue influence such as will operate to set aside a will on that ground. Undue influence must, in order to have such effect, destroy the free agency of the testatrix at the time and in the very act of making the testament. It must bear directly upon the testamentary act: Estate of Donovan, 140 Cal. 394, 87 Pac. 380.

The demurrer to the seventh ground of contest should be sustained.

Contestants say that the code does not demand that the evidence to be given at the trial be stated, and it points out clearly what is necessary in a pleading and how it shall be construed. The facts constituting the cause of action should be stated in ordinary and concise language. It does not say the evidence of those facts. It is the ultimate fact, and not the prior or probative facts, which should be set forth. Presumptions of evidence cannot dispense with averments of ultimate facts. Probably no better statement can be made of what is required than that contained in the opinion of Mr. Chief Justice Field in Green v. Palmer, 15 Cal. 414, in which he engaged at length in a discussion upon this topic. The syllabus on page 412 of that volume is an accurate abbreviation of the context.

Under our system of pleading, facts only must be stated. This means the facts, as contradistinguished from the law, from argument, from hypothesis, and from the evidence of the facts. Those facts, and those only, must be stated, which constitute the cause of action or the defense. Each party must allege every fact which he is required to prove, and will be precluded from proving any fact not alleged; and he must allege nothing affirmatively which he is not required to prove. Negative allegations, however, are frequently necessary, though they are not to be proved. If every fact essential to the claim or defense be not stated, the adverse party may demur; and if any fact not essential to the claim or defense—in other words, any except issuable facts—be stated, the adverse party may move to strike out the unessential parts. An unessential, or what is the same thing, an immaterial allegation, is one which can be stricken from the pleading without leaving it insufficient, and need not be proved or disproved. Whether an allegation be material may be determined by the question, "Can it be made the subject of a material issue?" In other words, "If it be denied, will the failure to prove it decide the case in whole or in part?" If it will not, then the fact alleged is not material. All statements in a pleading must be concisely made, and when once made, must not be repeated.

It is true that judicial construction must be liberal, and that no error or defect should be regarded unless it affects substantial rights; but liberal construction must not incline

to laxity where the rules of pleading are well established and have been so for many decades interpreted by the supreme courts, as in this class of cases. Substantial rights can be conserved only by adherence to those rules.

The points raised by the demurrer in regard to paragraph 7 of the contest do not seem to be technical; if this court so regarded them, they would be overruled, but they appear to conform to the authorities requiring particularity in pleadings of this kind.

It has ever been the rule that it is essential to the issue that there shall be certainty, clearness, distinctness and particularity in pleading. When it is said that the issue must be certain, the meaning is that it must be particular or specific as opposed to general. Each issue tendered must be single, certain and material in its quality. The allegations should be definite, precise and positive, so as to acquaint the respondent with the matter that he is called upon to traverse. These rules are recognized, adopted and universally approved by the courts, and need not be enlarged upon here: See Stephen's Pleading, Andrews' Am. ed. 1894, secs. 100-103.

An allegation that influence was overpowering or that the testatrix was unable to resist, without the recital of the facts supporting such conclusion, is not sufficient. An allegation that "contestants are informed and believe" that a certain event occurred is not positive. The averment must be direct, although it may be based on such information and belief. The fact itself must be alleged in set terms.

An allegation "on information and belief" that the will of Clara Harris was absolutely overpowered by the lies and misrepresentations of Lawrence Harris continued daily after the death of Stephen L. Harris in February, 1902, lacks certainty, under the rule, because it does not specify the lies nor particularize the species of misrepresentations which dominated the will of decedent. Allegations of fraud should state the facts sufficient to constitute the fraud, otherwise a special demurrer should be sustained: Scearce v. Glenn County, 100 Cal. 419, 35 Pac. 302.

These are specimens of imputed infirmities in the pleading here demurred to, of which the court feels compelled to take notice and which may be cured by an amended contest. The court does not favor dilatory pleas, nor does it design to en-

courage the demurrer habit, but there are certain well-recognized rules of pleading which it cannot, if it would, disregard.

Paragraph 8 of the contest is subject to the foregoing remarks, as all the allegations of 7 are incorporated therein, except, perhaps, the part beginning with line 17 on page 4 down to and including line 18 on page 6. This seems to be fairly within the matters of Ruffino, 116 Cal. 304, 48 Pac. 127, and Wilson, 117 Cal. 280, 49 Pac. 711. The contestants may introduce evidence of the manner of acquisition of the property disposed of in the will, as bearing in some degree, however remotely, on the question of testamentary capacity. The substance of this clause may be considered proper to support evidence within the limitation suggested, although the form might be remodeled to correspond to the views of this opinion.

Otherwise, the demurrer should be and it is sustained, with ten days within which to file an amended contest.

---

*The Principal Case in Denying the Power* of the superior court in probate to appoint a guardian ad litem is important, in that it decides a question not infrequently raised and hitherto perhaps not free from doubt. The notes in the pages to follow have to do with guardians ad litem in civil actions generally, not in probate proceedings, and hence the authorities and statements therein are not to be construed as in any way modifying the decision of Judge Coffey in the principal case.

### RIGHTS, DUTIES, AND POWERS OF GUARDIAN AD LITEM.

**Power to Sue.**—Infants, being persons under disability, cannot conduct their own legal proceedings, and the usual custom is for them to appear either by next friend or guardian ad litem. Under a Mississippi statute, a guardian ad litem is considered the full representative of the rights and interests of the minor for the particular case in which he was appointed, and has the same powers as a general guardian: Burrus v. Burrus, 56 Miss. 92; while in Pennsylvania a next friend of an infant, though recognized for certain purposes, is held not to have the power of a trustee or guardian: Turner v. Patridge, 3 Penr. & W. (Pa.) 172.

A suit may be brought by the next friend of an infant without first obtaining leave of the court or of the infant: Bethea v. McCall, 3 Ala. 449; Barwick v. Rackley, 45 Ala. 215; O'Donnell v. Broad, 11 Pa. Co. Ct. 622, 1 Pa. Dist. Rep. 650. But see In re Whitlock, 19 How. Pr. 380. He is, however, under the control of the court, and may be removed and another appointed if the interests of the infant require it: Ex parte Kirkman, 40 Tenn. (3 Head) 517. And in proceedings for the sale of real estate of a minor, the spe-

cial guardian appointed was held to be an officer of the court; and that until he reached his majority, and the purchase money had in fact been paid over to him, and as long as it remained in the hands of the special guardian, the court had control over it and over all the proceedings in the application: In re Price, 67 N. Y. 231, affirming 6 Hun, 513.

Where a life insurance policy provided that in case of death the insurance should be paid to the children or their guardian, if under age, the guardian ad litem may sue therefor, and it need not be in the name of the general guardian: Price v. Phoenix etc. Ins. Co., 17 Minn. 497, 10 Am. Rep. 166.

Such Representative of an Infant can Act Only in the Matter for which he was appointed: Waterman v. Lawrence, 19 Cal. 210, 79 Am. Dec. 212. So a special guardian appointed to represent a minor in a private sale of land cannot bind him by a judgment in a suit brought by the guardian to compel a purchaser to take title: Armstrong v. Weinstein, 53 Hun, 635, 6 N. Y. Supp. 148. His authority does not extend to bringing or prosecuting more than the one particular action in which he was appointed: Rosso v. Second Ave. R. Co., 13 App. Div. 375, 43 N. Y. Supp. 216. Therefore a guardian ad litem cannot agree that a decision in one case shall determine that in another, although the same facts are involved, the same parties, and substantially the same points of controversy: McClure v. Farthing, 16 Mo. 109. Where such a guardian is appointed in an action for the settlement of a trust, he cannot bind the infant by a stipulation in regard to the expenditure of money coming from a totally distinct source: In re Kennedy's Estate, 120 Cal. 458, 52 Pac. 820.

The Power of a Next Friend Commences with the suit; and he can therefore maintain a suit for such causes of action only as may be prosecuted without a previous special demand, unless the defendant has waived the necessity therefor: Miles v. Boyden, 20 Mass. (3 Pick.) 213. His authority terminates with the judgment in the case: Davis v. Gist, Dud. Eq. (S. C.) 1; or with the minority of the infant: Lang v. Belloff, 53 N. J. Eq. 298, 31 Atl. 604.

The Acts of a Guardian Ad Litem are Binding on Infant parties for whom they are performed, when not impeached for fraud, collusion or gross misconduct: Smith v. Taylor, 34 Tex. 589. So if a party is served with process and a guardian ad litem is appointed to represent him, who appears and files an answer, the ward is brought into court for all purposes of the suit and is charged with notice of all new pleadings that may be filed either by the original parties or any others who may come into the case; and he is bound by whatever judgment may be recovered by or against any person who was a party to the suit at the time of its rendition: Deering v. Hurt (Tex.), 2 S. W. 42.

Duty to Make Vigorous Defense.—The law is exceedingly jealous in guarding the interests of infant suitors, and exacts of their next

friends or guardians ad litem as vigorous a defense to the action as its nature will admit: Sconce v. Whitney, 12 Ill. 150; Rhoads v. Rhoads, 43 Ill. 239; Tyson v. Tyson, 94 Wis. 225, 68 N. W. 1015. In Stunz v. Stunz, 131 Ill. 210, 23 N. E. 407, it is said: "It is the duty of the guardian ad litem, when appointed, to examine into the case and determine what the rights of his wards are, and what defense their interest demands, and to make such defense as the exercise of care and prudence will dictate. He is not required to make a defense not warranted by law, but should exercise that care and judgment that reasonable and prudent men exercise, and submit to the court for its determination all questions that may arise, and take its advice, and act under its direction in the steps necessary to preserve and secure the rights of the minor defendants. The guardian ad litem who perfunctorily files an answer for his ward, and then abandons the case, fails to comprehend his duties as an officer of the court." See, also, Stammers v. McNaughten, 57 Ala. 277; Stark v. Brown, 101 Ill. 395. He cannot fail to plead just because the infants are necessary or improper parties: Farmers' etc. Trust Co. v. Reid, 3 Edw. Ch. 414. And if the interests of the minors are prejudiced through the failure of the guardian ad litem to raise a proper objection to an action he is liable to them therefor: Reed v. Reed, 46 Hun, 212, 13 Civ. Proc. Rep. 109. See, also, Banta v. Calhoun, 9 Ky. (2 A. K. Marsh.) 166.

Making Prejudicial Admissions.—So far as concerns the substantial rights of his ward, a guardian ad litem can make no admissions to bind him, but everything must be proved against an infant: Hooper v. Hardie, 80 Ala. 114; Pillow v. Sentelle, 39 Ark. 61; Evans v. Davies, 39 Ark. 235; Waterman v. Lawrence, 19 Cal. 210, 79 Am. Dec. 212; Cochran v. McDowell, 15 Ill. 10; Taylor v. Parker, 1 Smith (Ind.), 225; Melton v. Brown, 20 Ky. Law Rep. 882, 47 S. W. 764; Benson v. Wright, 4 Md. Ch. 278; Burt v. McBain, 29 Mich. 260; Cooper v. Mayhew, 40 Mich. 528; and this holds good both at law and in equity: Atchison etc. R. Co. v. Elder, 50 Ill. App. 276; Collins v. Trotter, 81 Mo. 275.

In Atchison etc. R. Co. v. Elder, 50 Ill. App. 276, an infant was injured in a railroad accident. His father, as next friend, entered into a compromise with the railroad company, whereby a suit was instituted, attorneys employed by the company preparing the papers. The matter was submitted to the court, without a jury and without evidence, and a judgment for plaintiff entered for $250, pursuant to the compromise. An amended declaration was filed, whereon a hearing was had and the recovery increased to $2,500. The appellate court affirmed this judgment, holding that no estoppel applicable to the father could affect the infant. That a plaintiff in ejectment may be estopped from claiming land by recitals of ownership in a deed of his special guardian, see Esterbrook v. Savage, 21 Hun, 145.

Must Exclude Illegal Evidence.—If incompetent and illegal evidence is introduced, without any objection on the part of the guardian,

the court is bound to notice and exclude it: Cartwright v. Wise, 14 Ill. 417; Turner v. Jenkins, 79 Ill. 228. And such guardian cannot consent to the taking of testimony before a person not properly authorized to take it: Fischer v. Fischer, 54 Ill. 231.

A guardian ad litem should not consent to a general reference to a master to take an account against an infant, until he has ascertained that his rights can be protected on such reference: Jenkins v. Freyer, 4 Paige, 47. Where infants sue by their next friend to obtain a settlement of an administrator's account, an attorney employed by such next friend cannot bind the infants by an agreement to waive proof of the vouchers and accounts presented by the administrator, or to allow commissions other than allowed by law: Crotty v. Eagle, 35 W. Va. 143, 13 S. E. 59.

Assenting to Acts not Prejudicial to the Infant.—While a next friend cannot admit or stipulate away any substantial rights of the minors whom he represents, he may assent to arrangements which will facilitate the trial, and the infant is bound thereby. So he may consent to a trial of the case at the first term of court: McMillan v. Hunnicutt, 109 Ga. 699, 35 S. E. 102. A similar question arose in Kingsbury v. Buckner, 134 U. S. 650, 10 Sup. Ct. 638, where Justice Harlan, speaking for the court, said: "It is undoubtedly the law in Illinois, as elsewhere, that a next friend or guardian ad litem, cannot, by admissions or stipulations, surrender the rights of the infant. The court, whose duty it is to protect the interests of the infant, should see to it that they are not bargained away by those assuming, or appointed, to represent him. But this rule does not prevent a guardian ad litem or prochein ami from assenting to such arrangements as will facilitate the determination of the case in which the rights of the infant are involved. There is but one supreme court of Illinois, although for the convenience of litigants it sits in different places in that state, and, unless the consent of parties is given, can take cognizance, when holding its session in a particular grand division, only of cases arising in such division. But it is the same court that sits in the respective divisions, and a consent by the next friend or guardian ad litem that a case be heard in a particular division could not possibly prejudice the substantial rights of the infant. It is true that the consent of the plaintiff's next friend and guardian ad litem, that the case should go to the central grand division, brought it to a more speedy hearing than it would otherwise have had, if such consent had not been given. But, certainly, it was not to the interest of the plaintiff that the final determination of his case should be delayed." So he may consent to the removal of a cause from one court having jurisdiction thereof to another court of like jurisdiction: Lemmon v. Herbert, 92 Va. 653, 24 S. E. 245, citing Morriss v. Virginia Ins. Co., 85 Va. 588, 8 S. E. 383. And he may, in his answer, admit such facts as do not tend to prejudice his ward: Ralston v. Lahee, 8 Iowa, 17, 74 Am. Dec. 291. He may also stipulate as to the condition of a bank account and so obviate the necessity of introducing the bank books in

evidence, such not prejudicing the infant: Rarick v. Vandevier, 11 Colo. App. 116, 52 Pac. 743. In Biddinger v. Wiland, 67 Md. 359, 10 Atl. 202, an infant defendant was regularly summoned, and, under the law then in existence, a commission to assign a guardian and take her answer was issued, and returned unexecuted. A second commission was issued, and also returned unexecuted. Meanwhile, and before the court, under the new rules, appointed a guardian to defend, the case being at issue as to other parties, adults, testimony was taken which fully established plaintiff's case. After that testimony was taken and returned, the court appointed a solicitor of the court to answer and defend for the infant, who did so, submitting the infant's rights to the protection of the court. It was then agreed in writing between the plaintiff's solicitor and the guardian, that the case should be submitted without argument to the court, the testimony already taken to have the same effect as if taken by the examiner after the infant's answer had been filed. This agreement was objected to as unauthorized, but the court held it proper; that the guardian must be presumed to have done his duty, and knew of no other testimony which could be procured in the infant's behalf; and the judgment was affirmed.

A guardian may adopt a report of the division of land in a partition suit, after the infants have been served, and so avoid the necessity for another division, where they were not made parties to the suit, and it was therefore reversed: Kentucky etc. Land Co. v. Elliott, 12 Ky. Law Rep. 812, 15 S. W. 518.

Where by statute a different rule is prescribed as to the power of a guardian ad litem to admit material facts in the conduct of a trial, or to control the case with as full authority as the minor could if he were of full age, such guardian may bind his ward by stipulation in the nature of a waiver of proof: Le Bourgeoise v. McNamara, 82 Mo. 189, affirming 10 Mo. App. 116.

Power of Compromise.—The general rule undoubtedly is, that the next friend or guardian ad litem of an infant has no power to compromise or settle the claim of his ward, and no agreement to that end can bind his ward, unless sanctioned by the court: Isaacs v. Boyd, 5 Port. (Ala.) 388; Johnson v. McCann, 61 Ill. App. 110; Edsall v. Vandemark, 39 Barb. 589; and especially is this so after it has been prosecuted to a judgment: O'Donnell v. Broad, 2 Pa. Dist. Rep. 84; Fletcher v. Parker, 53 W. Va. 422, 97 Am. St. Rep. 991, 44 S. E. 422. So if a next friend commutes a debt or judgment due his infant ward, he is responsible for the amount thereof and interest: Forbes v. Mitchell, 24 Ky. (1 J. J. Marsh.) 440; or the court may set aside such wrongful compromise: In re Etna, 1 Ware (462), 474, Fed. Cas. No. 4542. Where a next friend of minors died, and they inherited from him a greater amount of property than the judgment which he compounded, chancery will not prevent their looking to the judgment debtor, especially where the composition is of a doubtful nature, and make the debtor

resort to the estate of the next friend: Miles v. Kaigler, 18 Tenn. (10 Yerg.) 10, 30 Am. Dec. 425.

In George v. Knox, 23 La. Ann. 354, an agreement was made by the attorney of the vendor of real estate with the curator ad hoc, who represented the vendee in a suit to rescind the sale, by which the vendee was to take the rents of the property during the time that he had it in possession as an equivalent for a part of the price that he had already paid. This agreement was held not binding on the vendee, the curator ad hoc not being authorized to make it.

While holding that a next friend cannot enter into a compromise made out of court and not approved by the court, or where judgment is not entered in pursuance thereof, the case of Tripp v. Gifford, 155 Mass. 108, 31 Am. St. Rep. 530, 29 N. E. 208, is to the effect that a fair adjustment in court is allowable. It is there said: "We see no reason why the next friend should not have authority to institute or to entertain negotiations for a settlement of the controversy. His position with reference to it is like that of a general guardian, or the guardian ad litem of an infant defendant. It is to be expected that he will act fairly and intelligently for the real interest of the plaintiff; but it cannot be said that every suit brought in the name of the infant is upon a good cause of action, or that, if well brought, the just amount of the recovery cannot be arrived at without a trial, or that when the next friend and the defendant, and their respective counsel, who are sworn officers of the court, act in good faith, it is necessary that an investigation of the fairness of a proposed adjustment should be made or ordered by the court before disposing of the cause. The next friend is intrusted with the rights of the infant so far as they are involved in the cause, and acts under responsibility both to the court and the plaintiff. It may well be considered to be within his official duty to negotiate, if possible, a fair adjustment, without subjecting the plaintiff to the expense and risk of a trial."

Power to Arbitrate Claim.—A guardian ad litem or next friend cannot bind his wards by submitting the suit in their name to arbitration; but it is his duty alone to conduct the suit in court: Fort v. Battle, 21 Miss. (13 Smedes & M.) 133; Hannum v. Wallace, 28 Tenn. (9 Humph.) 129; Tucker v. Dabbs, 59 Tenn. (12 Heisk.) 18.

Power to Receive Money Recovered and to Satisfy Judgment.—The weight of authority is to the effect that a next friend has no authority to receive the money recovered in the action prosecuted by him, his power of representation ending with the suit; and for the same reason he cannot enter satisfaction on the record: Isaacs v. Boyd, 5 Port. (Ala.) 388; Smith v. Redus, 9 Ala. 99, 44 Am. Dec. 429; Glass v. Glass, 76 Ala. 368; Westbrook v. Comstock, Walk. Ch. (Mich.) 314; Carpenter v. Schermerhorn, 2 Barb. Ch. 314; Miles v. Kaigler, 18 Tenn. (10 Yerg.) 10, 30 Am. Dec. 425; American Lead Pencil Co. v. Davis (Tenn.), 67 S. W. 864. Therefore, a judgment for the plaintiff, a minor, for personal injuries, should not direct payment of the money to his next friend, but should require it to be deposited with

the clerk of the court, and by him paid to the minor's guardian: City of Austin v. Colgate (Tex. Civ. App.), 27 S. W. 896. Where by statute it is provided that any judgment recovered by a minor not exceeding $500 may, if he have no guardian, be taken charge of by his next friend, such next friend has no authority to receive a recovery of a sum exceeding that amount: Gulf etc. Ry. Co. v. Younger, 19 Tex. Civ. App. 242, 45 S. W. 1030.

If a next friend admits satisfaction of judgment on the record, it will be set aside in equity at the suit of the plaintiff therein after he has attained his majority: Cody v. Roane Iron Co., 105 Tenn. 515, 58 S. W. 850. There the court, after stating the general rule that a payment made to the next friend will not operate as a satisfaction, continued: "Hence the payment made to the next friend of this complainant was and is, in legal contemplation, the same as no payment at all.

"Such being true, the case now before the court is one in which there is a recited satisfaction in the face of a judgment where, in fact and in law, no satisfaction has been had, and that recitation, if allowed to stand, must inevitably preclude the complainant from the collection of his recovery, and thereby work a great wrong and fraud upon his confessed and adjudged rights.

"It is the peculiar province and pride of a court of equity to vouchsafe all needed and appropriate relief in such a case.

"It cannot be said against the complainant that he has been guilty of any wrong or fault at any point. The loss, if any, to be sustained through the payment already made, is due alone to the joint and illegal act of this defendant and the next friend, each of whom was charged with knowledge that such payment was wholly unauthorized in law; and it is better, if such be the ultimate result, that a participant in that act pay twice, than that the only person entitled to the money, and who is entirely innocent, should not be paid at all."

Payment to a prochein ami may, however, be legal satisfaction of recovery if ratified by the minor after attaining his majority or his legal representative after his death: Allen v. Roundtree, 1 Spear (S. C.), 80.

The minority view holds that the next friend may receive the recovery, give a sufficient acquittance and satisfy the judgment: Baltimore etc. R. Co. v. Fitzpatrick, 36 Md. 619; O'Donnell v. Broad, 2 Pa. Dist. Rep. 84; and it may be paid to his regularly appointed attorney, but the right of the next friend or his attorney to receive the money is subordinate to that of the regular guardian: Baltimore etc. R. Co. v. Fitzpatrick, 36 Md. 619. See, also, Stroyd v. Traction Co., 15 Pa. Super. Co. 245.

In Cody v. Roane Iron Co. (Tenn.), 53 S. W. 1002, affirmed, 105 Tenn. 515, 58 S. W. 850, it is held that though a next friend has no right to take the money paid him out of court, he may acknowledge satisfaction on the record; that the proper course is for the court to direct the money to be paid into court, for the purpose of being

subsequently paid out to the regular guardian, or of being lent out under order of court for the benefit of the infant.

**Power to Contract for Legal Services.**—Where it is for the infant's benefit that counsel be employed, the guardian ad litem or next friend may do so: Glass v. Glass, 76 Ala. 368; Baltimore etc. R. Co. v. Fitzpatrick, 36 Md. 619; Colgate v. Colgate, 23 N. J. Eq. 372. But see In re Johnston, 6 Dem. Sur. (N. J.) 355, holding that a guardian ad litem in the surrogate's court will employ counsel at his own expense.

There is a conflict as to whether such guardian may enter into a contract for the services of an attorney. In Yourie v. Nelson, 1 Tenn. Ch. 614, it is held to be his duty to make a contract with counsel for professional services, or agree with him as to his compensation, and such expenses fall under the head of just allowances to which fiduciaries are entitled. Other cases take an opposite view, under which he cannot bind his ward by a contract for attorney's fees: Cole v. Superior Court, 63 Cal. 86, 49 Am. Rep. 78; Houck v. Birdwell, 28 Mo. App. 644. In the former of those cases it is said: "The guardian ad litem is an officer of the court appointing him; his duties 'are to represent the infant, insane or incompetent person in the action or proceeding': Code Civ. Proc., sec. 372. He may, doubtless, employ an attorney to assist him in the prosecution or defense of the action, but he may not make a contract for the payment of compensation which shall absolutely bind the ward or his estate. . . . . His powers are certainly no greater than those of a general guardian. Like the latter he may be allowed a credit for moneys advanced or paid out of the fund collected, as reasonable compensation for the expenses, and for the services of an attorney. But he has no power by specific agreement with the attorney to fix such compensation absolutely. An attorney accepting employment, and rendering services under such circumstances, must rely upon the subsequent action of the court in ascertaining and adjusting proper compensation. He cannot determine the amount, nor can he retain what he or the guardian ad litem may deem a proper sum, leaving it to the general guardian to sue for the excess. There is no place here for the doctrine of an implied promise upon a quantum meruit. The presumption of a promise is rebutted by the fact that the guardian had no power to contract in such manner as to bind the assets of the ward except conditionally."

**Power to Purchase at Sale of Infant's Property.**—The question has arisen as to how far a next friend or guardian ad litem is a trustee in such a sense as to be prohibited from purchasing the infant's property at a sale. The Kentucky courts hold that he is not such a trustee, and the rule does not apply: Mitchell v. Berry, 58 Ky. (1 Met.) 602. In Spencer v. Milliken, 4 Ky. Law Rep. 856, it was held that a sale was not void because a guardian ad litem was the purchaser, the infant having been represented by a trustee who defended for him.

The decisions of the other courts, however, consider a guardian ad litem as a trustee within the meaning of the rule, and will not uphold a purchase by him at a sale of the infant's property: Collins v. Smith, 38 Tenn. (1 Head) 251; Starkey v. Hammer, 60 Tenn. (1 Baxt.) 438; Gallatian v. Cunningham, 8 Cow. 361; nor can he acquire the property of infant heirs pending a litigation in respect to it: Massie v. Matthews, 12 Ohio, 351.

The rule prohibiting a purchase by a guardian ad litem, not made for the benefit nor in behalf of his infant wards, is absolute, and it makes no difference that the purchase was made, not for the guardian's own benefit, but for that of some other person: Le Fevre v. Laraway, 22 Barb. 167. The presumption in the case of a purchase by the guardian ad litem is that it is for his benefit, and the burden is on him to show that it was made for the infant's good: O'Donoghue v. Boise, 92 Hun, 3, 37 N. Y. Supp. 961. That the remedy of infants against persons purchasing from their guardian ad litem, who bought the property at a sale, is, in the absence of any statutory provision, in equity, and hence voidable and not void, see Dugan v. Denyse, 13 App. Div. 214, 43 N. Y. Supp. 308.

Power to Waive Service of Process.—As a general rule, a guardian ad litem cannot waive service of process: Robbins v. Robbins, 2 Ind. 74; Pugh v. Pugh, 9 Ind. 132; Cormier v. De Valcourt, 33 La. Ann. 1168. So the answer of guardian ad litem does not make his wards parties and dispense with the necessity of services of process: Frazier v. Pankey, 31 Tenn. (1 Swan) 75. In Hannum v. Wallace, 28 Tenn. (9 Humph.) 129, however, it was held that, if not prejudicial to their interests, the guardian might waive service of a copy of the declaration and notice, thus saving delay and a useless accumulation of costs.

In Banta v. Calhoun, 9 Ky. (2 A. K. Marsh.) 166, it was held that if the guardian appeared, it was not necessary for process to be served on the infant. And where a minor has been served with citation, and a guardian ad litem appointed for him, such guardian may waive notice of citation, and consent to a hearing: Pollock v. Buie, 43 Miss. 140. Where a warning order published against a minor defendant was not entirely definite as to the place at which he was warned to appear, and a guardian ad litem was appointed by the court, who filed an answer for his ward, it was held that the notice and appearance were sufficient to bind the latter: Williams v. Ewing, 31 Ark. 229.

Right to Appeal.—A guardian ad litem may and should appeal whenever, in his opinion, it is necessary to protect his ward's interest: Sprague v. Beamer, 45 Ill. App. 17; Loftis v. Loftis, 94 Tenn. 232, 28 S. W. 1091; Tyson v. Tyson, 94 Wis. 225, 68 N. W. 1015; and leave of the court is not necessary: Jones v. Roberts, 96 Wis. 427, 70 N. W. 685, 71 N. W. 883.

Under a statute restricting the right of appeal to parties to a suit, a guardian ad litem may be a party thereto, and as such has the right

of appeal on behalf of the infants, to protect or advance their interests: Thomas v. Safe Deposit etc. Co., 73 Md. 451, 21 Atl. 367, 23 Atl. 3. In Harlan v. Watson, 39 Ind. 393, it is held that such a guardian cannot appeal in his own name.

**Power to Make Oath for Infant.**—The next friend of an infant may verify a pleading in the action in which he is acting: Turner v. Cook, 36 Ind. 129; and he may make an affidavit in replevin: Wilson v. Me-ne-chas, 40 Kan. 648, 20 Pac. 468; and also for an attachment, and stating therein that he has commenced the action as next friend sufficiently avers the agency: McDowell v. Nims, 15 Week. Law Bull. (Ohio) 359.

**Duty to Use Good Faith.**—A guardian ad litem must act toward the infant whom he represents in good faith: Spelman v. Terry, 74 N. Y. 448. In that case a special guardian attempted to make use of an invalid claim and to put a purchaser of such claim from him in possession of land of an infant. The court condemned any such action in the following words: ''We do not hold that one appointed special guardian to sell infants' real estate, who then holds a valid encumbrance upon or a claim against the same, thereby loses his rights in his encumbrance or claim, or is to forego the sale of it to his own advantage. What we do hold is, that he may not, after he is appointed, so use an invalid claim held by him as to put a purchaser of it from him into possession of the lands; whereby an action of ejectment is made necessary to regain possession by the one lawfully entitled. It is an act in hostility to the interests of his ward, and inconsistent with the duty he owes. For the damage from such act he should make just compensation. Such rule is a branch of the principle that one holding a relation of trust to another cannot deal with the trust estate or fund to his own profit and the harm of the cestui que trust.'' If the next friend plays his infant ward false, the judgment is not thereby rendered void, but the defrauded plaintiff may resort to a court of equity to set aside and undo the fraudulent work and to wipe out the record, falsely obtained, by which he is confronted: Cudleigh v. Chicago etc. Ry. Co., 51 Ill. App. 491.

In Ivey v. McKinnon, 84 N. C. 651, it is held that if in partition proceedings the interest of a prochein ami is adverse to that of the infant, a decree therein will not on that account be disturbed unless fraud or collusion is established. Where an infant sues a guardian personally for positive and specific fraud, no prior accounting from the guardian is necessary, as it is where an action upon a guardian's bond against his sureties is sought to be brought: Koch v. Le Frois, 61 Hun, 205, 15 N. Y. Supp. 928. It is not a badge of fraud that a decree, rendered on a certain day, was entered as of a week previous, without objection from the guardian ad litem; nor that he failed to apply for a rehearing: Kingsbury v. Buchner, 134 U. S. 650, 10 Sup. Ct. 638. And taking a second mortgage by a special guardian is not wrongful, nor necessarily a breach of trust, where appointed for

the sale of infants' lands: Monroe v. Osborne, 43 N. J. Eq. 248, 10 Atl. 267.

**Miscellaneous Rights and Duties.**—The powers of a guardian ad litem are strictly limited to the matter before the court. Hence he cannot bind his ward by a release, to qualify a witness to testify: Walker v. Ferrin, 4 Vt. 523; nor can he make a demise in ejectment: Massies v. Long, 2 Ohio, 287, 15 Am. Dec. 547. He cannot consent to a sale of his ward's real estate to satisfy notes for purchase money, before their maturity: Melton v. Brown, 20 Ky. Law Rep. 882, 47 S. W. 764. If, however, a sale of the minor's property is for his benefit, it will not, without complaint on his part, be set aside on the application of the purchaser: Curd v. Bonner, 44 Tenn. (4 Cold.) 632. Where a special guardian of infants entered into a contract of sale conjointly with the adult owners, and the deed tendered the purchaser was executed by the guardian jointly with the other owners, it was held no objection, the fact that other parties owning other interests joined in the same contract and deed not depriving either instrument of its binding effect upon all concerned: O'Reilly v. King, 28 How. Pr. 408.

Where an order is made by a court of chancery appointing a guardian for certain infants, and authorizing him to cancel a bond and mortgage belonging to them, upon receiving another one on unencumbered real estate, this latter provision is a condition precedent to his discharging the bond and mortgage, and he has no right to do so unless he receives the security mentioned in the order: Swarthout v. Swarthout, 7 Barb. 354.

A replevin bond in a suit by an infant is valid, though executed by his next friend as one of the two sureties required by statute, he not being a party, but in the nature of an attorney: Anonymous, 2 Hill, 417. He may elect to bring the infant's estate into hotchpot: Andrews v. Hall, 15 Ala. 85.

Where a mortgage is given to the special guardian of an infant for the latter's benefit, such special guardian is the proper person to file a bill for the redemption and assignment of a senior mortgage upon the same premises: Pardee v. Van Anken, 3 Barb. 534. The investment of infant's money by a guardian ad litem in the capital stock of a bank is legal, though it afterward fail: Haddock v. Planters' Bank, 66 Ga. 496.

A next friend falls within the principle that statements made in the course of judicial proceedings with regard to third persons are conditionally privileged and not actionable if made without malice, with probable cause, and under such circumstances as to reasonably create the belief that they were true: Ruohs v. Backer, 53 Tenn. (6 Heisk.) 395, 19 Am. Rep. 598.